*In re* DUNNIGAN'S ESTATE.

CLAIM OF COOK.

1. WORK AND LABOR—EXPRESS CONTRACTS—HOUSEKEEPING SERVICES
FOR PRIEST.
   Claimant against estate of a priest, who had received a salary
   from the parish for doing secretarial work of the parish *held*,
   not precluded, because of express contract for such work, from
   claiming an implied contract as to housekeeping services ren-
   dered in addition to secretarial work and not covered by con-
   tract therefor and for which priest himself was liable according
   to a rule of the diocese.

2. BILLS AND NOTES—CONSIDERATION.
   In action against estate of a priest by claimant who not only did
   the secretarial work of the parish but performed manifold
   household services for which diocese required that he be respon-
   sible, latter services *held*, sufficient consideration for disputed
   portion of note given claimant by deceased.

3. SAME—INSTRUCTIONS—CONSIDERATION—GIFTS.
   In action by claimant for note alleged to have been given her in
   part for household services performed for deceased priest over
   a period of upwards of 25 years, instruction that if the note
   or part of it was a gift to claimant she could have only that
   part for which she had given consideration *held*, proper.

Appeal from Genesee; Gadola (Paul V.), J.   Sub-
mitted October 19, 1937.   (Docket No. 125, Calendar
No. 39,759.)   Decided December 15, 1937.

In the matter of the estate of Patrick R. Dun-
nigan, deceased.   Rose Kearney Cook presented her
claim for sums due on a promissory note.   From
allowance of claim in probate court, James Dun-
nigan and other heirs at law appealed to circuit

court.  Verdict and judgment for Rose Kearney Cook.  Contestants appeal.  Affirmed.

*Leo B. Lange* (*Neithercut & Neithercut,* of counsel), for appellants.

*Guy W. Selby,* for appellee.

Butzel, J.  Rose Kearney Cook presented a claim evidenced by a note of $23,203.57 against the estate of the late Father Patrick R. Dunnigan, of Flint, Michigan.  She had worked for Father Dunnigan upwards of 25 years prior to his death; approximately 10 years of this period being during the time that decedent had charge of a parish at Lapeer and 15 years or more up to the time of his death being while he had charge of the parish at Flint.  During the interval between these two periods, while decedent was overseas in the world war, claimant was employed in an office in Detroit.  Claimant received a salary of $25 per week from the parish for secretarial work.  Claimant acted as housekeeper, prepared meals and managed decedent's home at Lapeer and Flint.  For these services the parish did not pay her and, according to the rules of the diocese, it was incumbent upon decedent to do so.  She had long hours of work, beginning at 6 in the morning and frequently lasting until 11 or 12 at night, and occasionally still longer.  There were generally two or three other priests living in decedent's home.  The fact that she performed long and arduous labors outside of her secretarial work is not disputed.

Claimant evidently had saved some money and invested in stock from time to time.  In 1924, she purchased $7,000 of stock in the Consumer's Power Company.  Decedent had also invested over $13,000 in the same stock.  He stated at the time that he

wanted his stock placed in the joint names of claimant and himself so that in case of his death the stock would belong to her. Claimant stated that if this was done, she wanted her stock also held jointly. The stock was thereupon put in their joint names. Subsequently, when the stock was sold, decedent received all the proceeds and invested it in a piece of property that he developed for cemetery purposes. Some time later, claimant was also given the position as secretary to the cemetery association at an additional salary of $30 per week.

On April 15, 1933, decedent executed the note in question and secured it by mortgage on the cemetery property. Decedent sent for his attorney and instructed him to draw a mortgage and note in claimant's favor for either $20,000 or $21,000. Towards the latter part of the same week, decedent went to the office of his attorney, stated that he had made a mistake in the figures and that he owed claimant more than the amount of the note. He had a list of the amounts he owed her. They aggregated $23,203.57, the amount of the face of the note. The attorney testified that an item for extra work done was included in the list. The note and mortgage' after execution were delivered to claimant during decedent's lifetime.

Appellants concede that at that time the sum of $1,380 for back salary as secretary and also $7,000 Consumers Power Company stock were due her. They claim that there was no other sum due her and the surplus over and above the amounts admitted to be due her constitute a gift, and that a note given as a gift in the hands of the original donee is not enforceable against the donor's estate. *Conrad* v. *Manning's Estate*, 125 Mich. 77.

Appellants further claim that there being an express contract to pay claimant a certain sum of

money, there cannot be an implied contract which differs for the same services. The claim arises entirely, however, for services not covered by the express contract. Housekeeping, cooking, etc., were not part of the secretarial work and may be the consideration for an implied contract to pay plaintiff a sum in excess of that provided by the express contract. *Pfeiffer* v. *Michelsen,* 112 Mich. 614.

The probate court allowed claimant the full amount of the note and interest and, on appeal, the jury rendered a verdict in favor of claimant for the full amount of her claim with interest. Appellants claim on appeal that the verdict of the jury was against the great weight of the evidence; that the court erred in instructing the jury that the claimant could recover for the services when, as appellants claim, no claim had ever been made for such services by her; that claimant could not recover more than the admitted amounts included in the note together with $1,580 due her at the time of decedent's death for services as secretary of the cemetery association.

The record is replete with testimony showing that decedent not only expressed his gratitude towards claimant but his assurances that he expected to compensate her. It was shown that the parish furnishes a certain sum for secretarial work, but that the priest is liable for the work done in his home. Claimant did the cooking, made the beds, cleaned the house, attending to the laundry, canning, preserving and all the ordinary work that is generally performed by a housekeeper. At first she was assisted by her sister, but later claimant did the work alone. Decedent acknowledged the latter's services and feared that he would be unable to compensate her. He told others about giving the note and mortgage in recognition of what he thought was due

claimant. Considerable stress is placed upon the fact that claimant never made an actual demand for payment for her services. This was true even while claimant was working for decedent at Lapeer and decedent was unable to pay her the salary due her from the parish. Claimant testified, upon being called as a witness by the appellants, that she expected payment for her services. Decedent told claimant that he was giving her a mortgage covering the note for all the services she had rendered to him for many years. The record shows beyond any question that services were rendered and the note was given in payment. Appellants claim there was an exchange of gifts. They claim that claimant made Father Dunnigan a gift of her services and he, in turn, gave her a gift of part of the note. The trial judge left the question to the jury as to whether the note was given claimant for money advanced and services rendered; that if the note or part of it was a gift, that claimant would only have that part for which she had given consideration. Appellants certainly cannot complain of the fairness of the charge. We call attention to the case of *In re Estate of King*, 94 Mich. 411, where the facts were somewhat similar to those in the instant case and in which the court went further in upholding the sufficiency of the consideration of a note than we are called upon to hold in the present case.

The judgment in favor of claimant is affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.