VANGUARD INSURANCE COMPANY v CLARKE

Docket No. 87772. Argued March 6, 1991 (Calendar No. 4). Decided
September 10, 1991.

Melinda Clarke, for herself, and as personal representative of the
estates of Linda L. Clarke and Brian J. Clarke, deceased,
brought a wrongful death action in the Oakland Circuit Court
against Howard Linden, personal representative of the estate of
William G. L. Clarke, deceased, alleging that William's negli-
gent act of closing the garage door of the family home with the
car inside and the engine running was the proximate cause of
Linda's and Brian's deaths. In response, Vanguard Insurance
Company, the insurer of the Clarke home, separately sought a
declaration that the policy's automobile exclusion absolved it of
any obligation to defend the lawsuit or to provide liability
coverage. Melinda Clarke argued that because the homeowner's
policy provided coverage for the negligent act of closing the
garage door, and that that act, concurrently with the negligent
operation of an automobile, resulted in the deaths, the exclu-
sion should not preclude liability. The court, John N. O'Brien,
J., granted summary disposition for Vanguard, finding that the
policy language that excluded coverage for damages arising out
of the use of a motor vehicle was not ambiguous, that concur-
rent causation was not presented by the facts, and that the sole
proximate cause was the operation of the motor vehicle. The
Court of Appeals, BEASLEY, P.J., and McDONALD and MURPHY,
JJ., reversed, holding that even though the policy exclusion
was not ambiguous, it did not relieve Vanguard of liability
under the theory of dual causation, and concluded that because
the act of closing a garage door was an act that could give rise
to liability under the homeowner's policy, in that the accident
never would have happened without the concurrence of the
operation of the motor vehicle and the closing of the garage
door which trapped the lethal gases, the act of closing the
garage door with the car inside and the engine running may be

REFERENCES

Am Jur 2d, Insurance §§ 271, 463.

See the Index to Annotations under Concurrent Acts or Matters;
Insurance and Insurance Companies.

viewed as an act not related to the use of a motor vehicle (Docket No. 110598). The insurer appeals.

In an opinion by Justice BRICKLEY, joined by Justices LEVIN, RILEY, and GRIFFIN, the Supreme Court *held:*

The Court of Appeals erred in subordinating the explicit auto-related exclusion of the insurance policy to the doctrine of concurrent causation.

1. In the absence of ambiguity, the clear meaning of an insurance contract that does not violate public policy will be upheld. Where some ambiguity exists regarding the scope of an insurance policy, the construction most favorable to the policyholder will be adopted, and exceptions that preclude coverage for general risks will be strictly construed against an insurer. In this case, because no ambiguity exists regarding the exclusion, the insured cannot prevail on the basis of rules of construction that favor coverage.

2. The rule of reasonable expectation is an adjunct to the rules of construction of insurance contracts and is particularly applicable to standardized policies. Under the rule, the Supreme Court will examine whether a policyholder, upon reading the contract language, is led to a reasonable expectation of coverage. In this case, the indemnification received by the estate under the automobile policy for the same transaction at issue under the homeowner's policy provides inferential support for the proposition that the automobile policy provided coverage. The exclusion in the homeowner's policy plainly stated that coverage would not extend to personal injury or property damage arising out of the use or operation of an automobile. There is no compelling policy rationale to adopt the dual causation theory, and no sound jurisprudential reason to introduce a legal theory or doctrine that departs from the literal interpretation of an unambiguous insurance contract. Because the event at issue clearly arose out of the operation and use of an automobile, it cannot be said that the insured had been led to a reasonable expectation of coverage under the policy.

Justice BOYLE, joined by Chief Justice CAVANAGH, concurring, stated that to apply the theory of concurrent causation to require the insurer of the home to defend or indemnify despite the unambiguous and clearly applicable automobile exclusion would be to read the exclusion out of existence. A clear and unambiguous clause is valid as long as it does not contravene public policy.

Justice MALLETT, concurring, stated that while this case does not allow adoption of dual causation as a theory of liability,

under appropriate circumstances, dual causation could be legally supported as a theory of liability in Michigan.

Reversed.

181 Mich App 36; 448 NW2d 754 (1989) reversed.

INSURANCE — DUAL CAUSATION — UNAMBIGUOUS CONTRACTS.

There is no compelling policy rationale, and no sound jurisprudential reason, to adopt the theory of dual or concurrent causation in the context of insurance liability to permit departure from the literal interpretation of unambiguous insurance contracts.

*Caravas & Hildinger, P.C.* (by *Gary W. Caravas* and *Erik Hildinger*), for the plaintiff.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *George T. Sinas* and *David R. Brake*), and *Debra D. Crane* and *Howard T. Linden* for the defendant.

Amici Curiae:

*Lee R. Franklin, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

*Chasnis, Dogger & Grierson, P.C.* (by *John A. Chasnis*), for Westfield Companies.

BRICKLEY, J. The sole issue presented concerns whether this Court should adopt the theory of dual or concurrent causation in the context of insurance liability. The problem of concurrent causation arises "[w]hen an insured cause joins with one or more additional causes, which may be uninsured . . . ."[1] The question in such cases is whether the convergence of causes should defeat an insurance policy exclusion.

A minority of courts in foreign jurisdictions

---

[1] Brewer, *Concurrent causation in insurance contracts,* 59 Mich L R 1141 (1961).

have applied the concurrent causation theory to impose insurance liability notwithstanding an explicit policy exclusion. These cases involve the convergence of two or more causes of an indivisible injury to the insured and one of the causes falls within coverage of the insurance policy.[2] The Court of Appeals applied the minority rule of concurrent causation to reverse summary disposition for the plaintiff insurer in this declaratory judgment action. 181 Mich App 36; 448 NW2d 754 (1989).

Whatever the merits of dual causality in the tort law context,[3] an issue not before us today, we do not discern a compelling legal or policy basis as to why that doctrine should nullify an unambiguous insurance policy exclusion for auto-related injuries in a homeowner's policy. Accordingly, we reverse the decision of the Court of Appeals.

### I. FACTS

The tragic facts of this case are not complex.

---

[2] The leading case on concurrent causation is *State Farm Mutual Automobile Ins Co v Partridge,* 10 Cal 3d 94; 109 Cal Rptr 811; 514 P2d 123 (1973). Courts in Minnesota, Illinois, and Wisconsin have also applied concurrent causation in the insurance context. See, e.g., *Waseca Mutual Ins Co v Noska,* 331 NW2d 917 (Minn, 1983), *United States Fidelity & Guaranty Co v State Farm Mutual Automobile Ins Co,* 107 Ill App 3d 190; 437 NE2d 663 (1982), *Lawver v Boling,* 71 Wis 2d 408; 238 NW2d 514 (1976).

[3] However courts long ago recognized that the causation inquiry in the tort context differs from that applicable in the insurance context. *Bird v St Paul Fire & Marine Ins Co,* 224 NY 47, 53; 120 NE 86 (1918) (Cardozo, J.), "[T]here is a tendency [in tort law] to go farther back in the search for causes than there is in the law of contracts . . . [e]specially in the law of insurance, the rule is that 'you are not to trouble yourself with distant causes' . . . ." See also Bragg, *Concurrent causation and the art of policy drafting: New perils for property insurers,* 20 Forum 385, 386 (1985): " '[P]roximate cause has a different meaning in insurance cases than it has in tort cases. . . . [I]n insurance cases the concern is not with the question of culpability or why the injury occurred, but only with the nature of the injury and how it happened.' "

The Clarke family, William Clarke, his wife Linda, and their son Brian, lived in a ranch-style house with an attached two-stall garage in Clarkston. Defendant Melinda Clarke, the eldest daughter, studied at Michigan State University, and fortuitously lived in East Lansing at the time of the terrible accident on March 13, 1986.

William Clarke went bowling that evening with friends. He consumed alcohol over the course of the evening. Investigators surmised that alcohol consumption may have affected his judgment with regard to the fatal actions that followed.

Clarke drove home around midnight, and apparently used an automatic garage door opener to enter the family garage in his automobile. In a fatal error, Clarke closed the garage door while the car engine continued to run. Deadly carbon monoxide fumes killed Clarke as he sat in the car.

Clarke's wife, Linda, apparently went into the garage from the house to look for her husband at some point in the night. She too met death in the garage from the carbon monoxide fumes. Carbon monoxide fumes from the car's engine also claimed the life of the Clarke's son, Brian, whom rescue workers found lying in the hallway leading to the bedrooms of the house. Investigators surmised that he had gotten out of bed, took a few steps down the hallway, and died from fumes that had entered the house.

## II. LEGAL PROCEEDINGS

### A. TRIAL COURT

This action began in 1986 when Melinda Clarke, individually and as personal representative of the estate of her deceased mother, Linda Clarke, and her deceased brother, Brian, filed a wrongful death

action against the estate of her late father in Oakland Circuit Court. Melinda's wrongful death action alleged that William Clarke's negligent acts, including idling the car engine with the garage door of the family home closed, comprised the proximate cause of the deaths of Linda and Brian Clarke.[4]

Plaintiff Vanguard Insurance Company had issued a standard homeowner's insurance policy to William and Linda Clarke. The policy provided $300,000 in personal injury coverage for each occurrence. The policy also contained an exclusion for liability "[for] bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by, or rented or loaned to any Insured . . . ."

In response to Melinda Clarke's wrongful death lawsuit, Vanguard filed a declaratory judgment action, contending that the automobile exclusion absolved it of any contractual obligation to defend the lawsuit or provide liability coverage under the homeowner's policy. Vanguard moved for summary disposition on the basis of the policy exclusion for injuries arising out of the use or operation of an automobile.

Melinda Clarke opposed the motion on the basis of the theory of dual causation. Her counsel argued that the injuries to Linda and Brian Clarke resulted from two proximate causes—the closing of the garage door of the family home and the operation of the automobile. Melinda argued that the exclusion should not forbid liability under the homeowner's policy, because the policy provided coverage for the negligent act of closing the garage

---

[4] The complaint also alleged that William Clarke's negligence included failure to properly ventilate the garage and failure to warn his wife and son of the hazardous condition of the family home.

door, and that act, concurrent with the negligent operation of an automobile, resulted in injury. Her counsel argued that a question of material fact existed with regard to the cause of the injuries, negating summary disposition.

The trial court granted summary disposition for Vanguard in June 1988. It held, in the entirety, that "the policy language that excludes coverage for damages arising out of the use of a motor vehicle is not ambiguous. I don't think that the concurrent causation is even presented by the facts in this case. I think the sole proximate cause was the operation of the motor vehicle. The motion will be granted."

### B. COURT OF APPEALS

The Court of Appeals issued its opinion in November 1989, reversing the decision of the trial court. The Court of Appeals held that defendant Melinda Clarke's answer stated a valid defense, raising a genuine issue of material fact with regard to whether Vanguard had a duty to defend and indemnify the estate of William Clarke. The Court of Appeals agreed with the trial court's conclusion that the policy exclusion of auto-related occurrences contained no ambiguity. It nevertheless found that the policy exclusion did not relieve Vanguard of liability under the theory of dual causation.

The Court's opinion surveyed the case law on dual causation and found that the doctrine applied in the instant case. In examining opinions from other jurisdictions that adopted the dual causation theory, the Court of Appeals conceded that "there is no uniform application of the doctrine . . . [and] no consensus on what differentiates 'auto-related' from 'non-auto-related' conduct [in standard home-

owner's automobile exclusion clauses]." *Id.* at 49. It relied primarily on *State Farm Mutual Automobile Ins Co v Partridge,* 10 Cal 3d 94; 109 Cal Rptr 811; 514 P2d 123 (1973).[5]

In *Partridge,* the insured filed the trigger mechanism of a .357 Magnum pistol to give it "hairtrigger action." He later went rabbit hunting at night with companions, intending to shoot rabbits while riding in his Ford Bronco. The vehicle hit a bump while in pursuit of a rabbit, and the pistol fired, striking and wounding a companion. The injured companion filed a negligence action against Partridge, the insured.

State Farm, the insurer had issued homeowner's and automobile policies to Partridge, and filed a declaratory action, seeking judgment on the basis of the automobile exclusion of the homeowner's policy. The *Partridge* court held that "when [an excluded and covered risk] constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *Id.* at 102.

The Court of Appeals viewed "[t]he crucial inquiry in applying *Partridge* to the facts of this case [as] whether the closing of a garage door with a vehicle running inside amounts to an insured risk." *Id.* at 49. It concluded that since "the act of closing a garage door . . . is undeniably an act which can give rise to liability under the homeowner's policy" and "the accident in this case

---

[5] *Partridge* remains "one of the most cited and controversial concurrent causation cases in the country" almost twenty years after its release. Houser & Kent, *Concurrent causation in first-party insurance claims: Consumers cannot afford concurrent causation,* 21 Tort & Ins L J 573, 575 (1986). It must be noted that the California Supreme Court itself has restricted or limited the application of *Partridge.* See, e.g., *Garvey v State Farm Fire & Casualty Co,* 48 Cal 3d 395; 257 Cal Rptr 292; 770 P2d 704 (1989); *State Farm Fire & Casualty Co v Kohl,* 131 Cal App 3d 1031, 1036; 182 Cal Rptr 720 (1982), holding the concurrent excluded cause must be independent.

would never have happened without the concurring events of both the operation of the motor vehicle and the closing of the garage door which trapped the lethal gases . . . the act of closing the garage door, with the car engine running inside, can be viewed as a non-vehicle-related act." *Id.* at 49, 50.

The Court of Appeals hastened to warn that its opinion "should not be construed in any way as an invitation for suits [based on] typical garden-variety automobile accidents." *Id.* at 58. It also stated that while the insurer had a duty to defend in the instant case, the defendant had not demonstrated the insurer's duty to indemnify, pending a jury determination of the proximate cause of the injuries. In light of these conclusions, the Court of Appeals reversed the decision of the trial court and remanded the case for further proceedings.

### III. ANALYSIS

The Court of Appeals erred in subordinating the explicit auto-related exclusion of the insurance policy to the doctrine of concurrent causation. The Court of Appeals, like the trial court, recognized that the policy exclusion at issue contained no ambiguity. A judgment for the insurer should have flowed from the Court's belief "that there is [no] ambiguous language which requires construction." *Id.* at 46. In the absence of ambiguity, this Court will uphold the clear meaning of an insurance contract that does not violate public policy. *Raska v Farm Bureau Mutual Ins Co,* 412 Mich 355; 314 NW2d 440 (1982).

In contrast, this Court has also long recognized that " 'wherever there are two constructions that can be placed upon the policy, the construction most favorable to the policyholder will be

adopted.' " *DeLand v Fidelity Health & Accident Mutual Ins Co,* 325 Mich 9, 18; 37 NW2d 693 (1949). Furthermore, this Court will strictly construe against an insurer exceptions in an insurance policy that preclude coverage for the general risk. *Pietrantonio· v Travelers Ins Co,* 282 Mich 111, 116; 275 NW 786 (1937).[6] These rules of construction apply where some ambiguity exists regarding the scope of coverage of an insurance policy. Because no ambiguity exists regarding the exclusion in the case at bar, the insured cannot prevail on the basis of the rules of construction that favor coverage.

The inquiry regarding coverage does not end with application of the rules of construction, however. This Court has also recognized that the rule of reasonable expectation comprises "[a]n adjunct to the rules of construction of insurance contracts . . . ." *Powers v DAIIE,* 427 Mich 602, 631; 398 NW2d 411 (1986). This rule is particularly applicable in take-it-or-leave-it standardized contracts such as insurance policies.

Under the rule of reasonable expectation, this Court will examine whether "the policyholder, upon reading the contract language is led to a reasonable expectation of coverage." *Id.* at 632.[7] From a subjective standpoint, this inquiry is obviously impossible to answer ex ante in the instant case. From an objective standpoint, however, the

[6] See also *Hooper v State Mutual Life Assurance Co,* 318 Mich 384, 393; 28 NW2d 331 (1947), " 'The courts have no patience with attempts by a paid insurer to escape liability by taking advantage of an ambiguity, a hidden meaning, or a forced construction of the language in a policy, when all question might have been avoided by a more generous or plainer use of words.' "

[7] Factors courts consider in determining the legitimate existence of reasonable consumer expectation include "whether an insurance policy includes a provision that unambiguously limits or excludes coverage and . . . whether a policyholder could have sufficiently examined an insurance policy so as to discover a relevant clause which limits the coverage . . . ." Keeton & Widiss, Insurance Law, p 636.

language of the insurance policy itself provides the best answer because it unequivocally prohibited liability for personal injuries "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle . . . ." Furthermore, the Clarke's estate obtained indemnification under the automobile policy from the same transaction at issue under the homeowner's policy. This indemnification provides strong inferential support that the insured had a reasonable expectation that the automobile policy covered the occurrence.[8]

The policy exclusion in the instant case plainly stated that homeowner's coverage would not extend to personal injury or property damage arising out of the use or operation of an automobile. Certainly, as the Court of Appeals recognized, the policy would have provided coverage had the garage door alone produced an injury, such as by closing on the insured's foot. In the instant case, however, the fumes produced by the operation of an automobile, and not the garage door, comprised the death-producing instrumentality. The direct terms of the auto-related occurrence exclusion therefore apply.[9]

The Court of Appeals opined that "[s]imply, without the garage door being closed, the carbon monoxide gases never would have been concentrated in toxic levels [and] Vanguard would provide coverage if the garage door was negligently closed while many other types of carbon monoxide

[8] The record indicates the estate received insurance proceeds of $100,000 under William Clarke's automobile insurance policy.

[9] Even California courts remain divided over the applicability of concurrent causation theory. Indeed, a California court might reject applying the concurrent causation theory under the facts presented because the concurrent cause of closing the garage door was not itself independently capable of producing the injury for which relief is sought. See, e.g., *Garvey v State Farm Fire & Casualty Co*, n 5 *supra*.

producing engines were running, such as ones found on a lawn mower, tractor, unregistered motor vehicle, generator, or go-cart." 181 Mich App 50. However, just because the insurer did not exclude all fume-producing machinery should not diminish its exclusion of a registered motor vehicle. Rather, the registered motor vehicle exclusion more rationally demonstrates an intent to insure all fume-producing engines except those already provided for under another policy—i.e., a registered automobile under an automobile insurance policy.

Even assuming that the explicit and unambiguous policy exclusion for auto-related injuries would not preclude a duty of the insurer to defend or indemnify under these facts, we perceive no compelling policy rationale to adopt the dual causation theory accepted in other jurisdictions. The Court of Appeals propounds no such policy rationale. The instant case does not confront the Court with a situation where an unfortunate insured would fall between gaps in homeowner's and automobile insurance policies because of mutual exclusions. Thus, the only conceivable policy rationale advanced by applying concurrent causation theory would be to provide double recovery under both a homeowner's and an automobile policy.[10] However, the judicial forum is an inappropriate one to impose such a policy preference, especially in light of the Legislature's limitation of double recovery in the no-fault automotive context, which evinced a policy to coördinate policy coverage for different types of occurrences.

[10] Although no rule of law specifically prohibits recovery under multiple policies, it has been noted that "[i]f an insured's injury is such that the payment of insurance under two or more coverages will produce a duplicate recovery, the result contravenes the principle that insurance is intended as no more than indemnity against loss." Keeton & Widiss, n 7 *supra* at 560.

In conclusion, no sound jurisprudential or policy reason exists to introduce a legal theory or doctrine that departs from the literal interpretation of an unambiguous insurance contract. In drafting an insurance policy, the drafters calculate the probability of risk in setting the price paid by the insured.[11] Here, a specific excluded risk comprised part of that calculus. Because the tragic event at issue here clearly "arose out" of the operation and use of an automobile, and it cannot be said that the insured had been led to reasonably expect coverage under the policy, the exclusion stands.

For these reasons, we reverse the decision of the Court of Appeals and reinstate the summary disposition ruling.

Levin, Riley, and Griffin, JJ., concurred with Brickley, J.

Boyle, J. I concur in the majority's analysis and result. I write separately to observe that to apply the theory of "concurrent causation" to require Vanguard to defend or indemnify despite the unambiguous and clearly applicable automobile exclusion would be to read the exclusion out of the policy. A clear and unambiguous clause is valid as long as it does not contravene public policy. *Raska v Farm Bureau Mutual Ins Co*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). While there may be circumstances that would require that a policy exclusion not be recognized, this case does not present such circumstances.

---

[11] See Brewer, n 1 *supra* at 1158-1159, "Causation is the principal device used by the insurance [draftsperson] to bring the risk assumed by the insurer within proportions which can be measured by the use of statistics and given a value in dollars. . . . [T]he predictability of consequences under insurance policies has general implications [for] the solvency of the company and the protection of other policyholders . . . ."

CAVANAGH, C.J., concurred with BOYLE, J.

MALLETT, J. I concur with the majority. The case at bar does not allow for adoption of dual causation as a theory of liability. That does not mean, however, we should not evaluate the theory again in the future. Under appropriate circumstances, dual causation, I believe, can be legally supported as a theory of liability in Michigan.