**FIRST MERCURY SYNDICATE, INC.,**
an Illinois corporation, Plaintiff,

v.

**TELEPHONE ALARM SYSTEMS, INC., a Michigan corporation, and Indiana Insurance Company, an Indiana corporation, Defendants.**

No. 1:92–CV–687.

United States District Court,
W.D. Michigan,
Southern Division.

April 1, 1994.

James D. Wilson, Douglas Young, Plunkett & Cooney, P.C., Detroit, MI, for plaintiff.

Karl A.H. Bohnhoff, Lansing, MI, for TAS.

Alan G. Gregory, Troy, MI, for Indiana Ins.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This case presents an action for declaratory judgment concerning the parties' rights and responsibilities under an insurance contract. Jurisdiction is based on diversity of citizenship. Now before the Court are the parties' cross-motions for summary judgment.

## I. FACTUAL BACKGROUND

Defendant Telephone Alarm Systems, Inc., ("TAS"), provides security and fire/smoke alarm systems to residential and commercial customers in the Lansing metropolitan area. In 1986, TAS purchased insurance coverage for its business operations from plaintiff First Mercury Syndicate, Inc. ("First Mercury"). The subject policy covered the period August 1, 1986, to August 1, 1987, and provided comprehensive general liability coverage, including insurance for contractual liability, personal injury, property damage, and errors and omissions.

On May 28, 1987, the business premises of Sohn Linen Service ("Sohn") in Lansing were damaged by fire. Sohn was a client of TAS. That is, TAS had installed a burglary alarm system in 1971 and a fire/smoke detection system in 1983. TAS had also contractually agreed to continue monitoring and servicing both systems. Sohn's losses, amounting to $890,598.31, were covered by its insurer, Indiana Insurance Company ("Indiana"), defendant herein. As subrogee of Sohn, Indiana filed suit against TAS in the Ingham County Circuit Court, *Indiana Ins. Co. v.*

*Telephone Alarm Systems, Inc.,* No. 89–65210–CK, asserting claims for breach of contract, negligence, and breach of express and implied warranties. Indiana alleged essentially that Sohn's fire damages were caused or exacerbated by TAS's defective fire/smoke detection system. That is, because the system malfunctioned, the fire department's response was delayed. TAS allegedly failed to properly install and monitor the system. First Mercury assumed its duty to defend TAS against the Indiana claims until shortly before trial, when this action was commenced. The state court action has been held in abeyance pending this Court's ruling on the existence and scope of coverage.

First Mercury contends it has no duty to defend or indemnify TAS under the terms of the policy. Specifically, First Mercury points to language in the Customer Contract Warranty Endorsement, which substantially alters coverage if there is not a valid written contract, containing a liquidated damages clause, between TAS and its customer. It is undisputed that the 1983 contract between TAS and Sohn, governing installation and monitoring of the fire/smoke detection systems, does not contain the liquidated damages clause. As a consequence, First Mercury contends TAS is entitled to reduced coverage which does not include the Sohn loss. TAS and Indiana construe the policy language differently.

## II. SUMMARY JUDGMENT STANDARD

The parties' cross-motions for summary judgment ask the Court to evaluate the factual support for their claims and defenses. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–248, 106 S.Ct. at 2510 (emphasis in original). If a movant carries its burden of showing there is an absence of evidence to support a claim or defense, then the opponent must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could find for its proponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of a claim or defense necessarily renders all other facts immaterial. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2553. See also *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–81 (6th Cir.1989).

## III. ANALYSIS

The parties essentially agree that there is no genuine issue of material fact and that adjudication of the motions for summary judgment will finally resolve this matter. At issue is the meaning of the insurance policy.

■■■ Under Michigan law, which undisputedly governs, insurance contracts are to be interpreted according to the commonly understood meaning of the language used, so as to avoid strained interpretations. *Thomas v. Vigilant Ins. Co.,* 156 Mich.App. 280, 282, 401 N.W.2d 351 (1986). Clear and unambiguous language in an insurance policy will be enforced as written. *Vanguard Ins. Co. v. Clarke,* 438 Mich. 463, 471, 475 N.W.2d 48 (1991); *Farm Bureau Mutual Ins. Co. v. Stark,* 437 Mich. 175, 181, 468 N.W.2d 498 (1991). The Court may not make a new agreement for the parties or give the policy a

meaning contrary to its express and unambiguous terms. *North River Ins. Co. v. Endicott,* 151 Mich.App. 707, 712, 391 N.W.2d 454 (1986). An insurance contract is unambiguous if it fairly admits of only one interpretation. *State Farm Mutual Automobile Ins. Co. v. Snappy Car Rental, Inc.,* 196 Mich.App. 143, 151, 492 N.W.2d 500 (1992). It is ambiguous if, after reading the entire contract, the language can reasonably be understood in different ways. *Bianchi v. Automobile Club of Michigan,* 437 Mich. 65, 70, 467 N.W.2d 17 (1991). Any ambiguity in an insurance policy drafted by an insurer is to be construed against the insurer and in favor of the insured. *Id.*

## A. Enforcement of the CCW

The Court's scrutiny of the instant policy focuses on the Customer Contract Warranty Endorsement ("CCW").[1] Pursuant to the CCW, the extent of coverage available to TAS for liability it may have to one of its customers depends on whether a valid written contract containing a liquidated damages clause existed between TAS and its customer.[2] The prescribed liquidated damages

1. The CCW provides in pertinent part:
   THIS ENDORSEMENT MATERIALLY AFFECTS AND CHANGES THE COVERAGE PROVIDED BY THIS POLICY.
   Notwithstanding anything to the contrary contained within the policy to which this endorsement applies, excepting the Classification Limitation Endorsement (460012), the Insured understands and agrees that such coverage as is afforded by the following Coverage Parts:
   Comprehensive General Liability Insurance, Broad Form Property Damage, Contractual Liability Insurance (limited), Personal Injury Liability Insurance and Errors and Omissions. applies only to claims occurring when a valid written contract exists between the Insured and his customer, contains the "liquidated damages" language which appears attached hereto as Endorsement No. # 1, is properly executed by the parties thereto and a valid copy of which is in the Insured's possession. In the absence of such a contract, the following endorsements are deleted in their entirety: Personal Injury Liability Insurance, Broad Form Property Damage, Contractual Liability Insurance (limited) and Errors and Omissions.
   *AND*
   Item 1. Coverage A—Bodily Injury Liability, and Coverage B—Property Damage Liability and Item III. Limits of Liability of the Comprehensive General Liability Insurance coverage part L–6395a are replaced by the following:
   1. Coverage A—Bodily Injury Liability
      Coverage B—Property Damage Liability
   The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
      A. bodily injury or
      B. property damage
   to which this Insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
   *Exclusions*
   This Insurance does not apply:
   . . . .
   (n) to property damage to the Named Insured's products arising out of such products or any part of such products;
   (o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
   (p) to bodily injury or property damage included within the completed operations hazard or the products hazard;

   .   .   .   .   .

2. The liquidated damages clause of Endorsement # 1 provides:

   It is hereby understood and agreed that the acceptable "liquidated damages" language is as follows:
   It is understood that T.A.S. is not an insurer, that insurance, if any shall be obtained by the subscriber and that the amounts payable to T.A.S. hereunder are based upon the value of the services and the scope of liability as herein set forth and are unrelated to the value of the subscriber's property or property of others located in subscriber's premises. T.A.S. makes no guarantee or warranty including any implied warranty of merchantability or fitness, that the system or services supplied will avert or prevent occurrences or the consequences therefrom, which the system or service is designed to detect. It is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from failure on the part of T.A.S. to perform any of its obligations hereunder. The subscriber does not desire this contract to provide for full liability of T.A.S. and agrees that T.A.S. shall be exempt from liability for loss, damage or

clause has the effect of limiting TAS's liability for damage or injury caused by any defect in TAS's service or equipment, to ten percent of TAS's annual service charge to the customer or $250, whichever is greater. If a valid contract with liquidated damages clause is in effect, then broader coverage is available because TAS's, and therefore First Mercury's, exposure is limited.

The 1983 contract between TAS and Sohn does not contain the liquidated damages clause. Defendants TAS and Indiana contend this fact is not dispositive. They assert several grounds upon which the Court should find that TAS is nonetheless entitled to broad coverage.

■■■■ First, defendants contend the CCW should be deemed a nullity because William Rugg, who signed the policy on behalf of TAS, was not personally aware of it and did not knowingly agree to the liquidated damages clause requirement. Under Michigan law, an insured is obligated to read his or her insurance policy and raise questions concerning coverage within a reasonable time after the policy is issued. *VanDyke v. League General Ins. Co.*, 184 Mich.App. 271, 275, 457 N.W.2d 141 (1990), *lv. denied*, 437 Mich. 916 (1991); *Transamerica Ins. Corp. v. Buckley*, 169 Mich.App. 540, 546, 426 N.W.2d 696 (1988). The insured is thus presumed to have read the policy and is held to knowledge of its terms and conditions. *Auto–Owners Ins. Co. v. Zimmerman*, 162 Mich.App. 459, 461, 412 N.W.2d 925 (1987), *lv. denied*, 428 Mich. 920 (1987); *Usher v. St. Paul Fire & Marine Ins. Co.*, 126 Mich.App. 443, 447, 337

N.W.2d 351 (1983). Proof of actual knowledge of, or of an actual "meeting of the minds" on each provision of an insurance policy is not prerequisite to its enforcement.

Defendants offer no reason why these general rules should not be observed. Accordingly, TAS is presumed to have understood and accepted the unambiguous terms of the policy, including the CCW liquidated damages clause requirement. The CCW should therefore be enforced as written.

■■■■ Defendants argue the CCW is ambiguous and should be construed liberally in favor of the insured. They contend the CCW only requires that there be *a* valid written contract containing the liquidated damages clause between TAS and its customer. This language is said to be ambiguous or broad enough to include *any* contract between TAS and its customer. In 1982, TAS executed a valid written contract with Sohn for continued service and monitoring of its burglary alarm system. This 1982 contract contains the liquidated damages clause. Defendants argue the existence of this contract represents substantial compliance with the CCW requirements.

■■■■ Terms of a contract are ambiguous only if they can *reasonably* be understood in different ways. *Bianchi, supra,* 437 Mich. at 70, 467 N.W.2d 17. The construction here urged by defendants is not reasonable. Admittedly, the CCW is not carefully worded. However, the notion that the scope of First Mercury's insurance coverage could be implicitly dictated by the existence and terms of a contract between TAS and Sohn other than

injury due directly or indirectly to occurrences or consequences therefrom which the service or system is designed to detect or avert; that if T.A.S. should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to ten percent of the annual service charge or $250.00, whichever is the greater, as the agreed upon damages and not as a penalty, as the exclusive remedy, and that provisions of this paragraph shall apply if loss, damage or injury irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, or T.A.S., its agents or employees. No suit or action will be brought against T.A.S. more

than one year after the accrual of the cause of action therefor. If the subscriber desires T.A.S. to assume a greater liability, T.A.S. will amend this agreement to allow the subscriber to pay an additional annual amount necessary to purchase an insurance policy for such greater liability. No such amendment shall be effective unless signed by the subscriber, T.A.S. and insurance carrier which will be insuring the additional liability. In the event any person, not party to this agreement, shall make any claim or file any lawsuit against T.A.S. for failure of its equipment or services in any respect, subscriber agrees to indemnify, defend and hold T.A.S. harmless from any and all such claims and lawsuits including the payment of all damages, expenses, costs and attorney fees.

the one under which Sohn's claims against TAS arise simply defies common sense and cannot have been within the reasonable expectations of the parties. The Court concludes the CCW is not materially ambiguous and declines the invitation to rewrite the parties' agreement.

■ Finally, defendants ask the Court to protect the reasonable expectations of the insured. TAS argues it intended to purchase $500,000 worth of coverage and, in consideration thereof, paid an annual premium of $8,775. To enforce the CCW as argued by First Mercury, so as to limit First Mercury's indemnification liability in this case to ten percent of TAS's annual service fee or $250 or nothing at all, is said to be patently unreasonable.

■ Under the "rule of reasonable expectation," an adjunct to the rules of construction of insurance contracts, the Court examines whether the policyholder, *upon reading the contract language,* is led to a reasonable expectation of coverage. *Vanguard Ins. Co. v. Clarke, supra,* 438 Mich. at 472, 475 N.W.2d 48. The reasonable expectation is respected not necessarily because it arises from ambiguity, but out of appreciation for the insured's weaker bargaining position. *Powers v. Detroit Automobile Inter-Insurance Exchange,* 427 Mich. 602, 632, 398 N.W.2d 411 (1986). Still, the insured's reasonable expectation that deserves protection must arise from the contract language.

Here, as discussed *supra,* the relevant language of the CCW is not ambiguous and does not reasonably give rise to an expectation contrary to its plain meaning. Neither does it appear that TAS is the innocent victim of disparate bargaining status. TAS appears to have been assisted in these matters by its own insurance agent, Shinberg Insurance Services of Lansing, which, in fact, provided the endorsement # 1 liquidated damages language included in the 1982 contract. Moreover, TAS is no stranger to the liquidated damages clause; the clause is incorporated into more than half of TAS's customer contracts. Finally, and not least importantly, the inclusion of the liquidated damages clause in a customer contract inures not only to First Mercury's benefit but to TAS's as

well. The CCW is not in the nature of an adhesion contract.

■ An insurance company may legitimately limit the risks it assumes and fix its premiums accordingly. *Usher v. St. Paul Fire & Marine Ins. Co., supra,* 126 Mich. App. at 447, 337 N.W.2d 351. The CCW is a legitimate, unambiguous exercise of this prerogative. It did not create any *reasonable* expectation contrary to its clear import.

Accordingly, the Court concludes the CCW is enforceable and must be enforced as written. There being no genuine issue as to the fact that the required liquidated damages clause was not incorporated into the 1983 TAS–Sohn contract, upon which subrogee Indiana's claims are premised, the Court holds that TAS is entitled only to such narrower coverage as the CCW provides.

### B. Scope of Coverage Under the CCW

■ The parties also disagree as to the scope of this narrower coverage. The CCW essentially provides that First Mercury will pay on behalf of TAS all sums which TAS becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, caused by an occurrence, subject to numerous express exclusions. See note 1, *supra.* First Mercury contends the recovery sought by Sohn's subrogee Indiana from TAS is not premised upon an "occurrence." "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." First Mercury argues Indiana's claims against TAS are based on its alleged faulty workmanship in having defectively installed and/or monitored the fire/smoke detection system. Faulty workmanship is said not to constitute an "occurrence."

Indeed, defective workmanship, *standing alone,* is not an occurrence within the meaning of the insurance policy definition. *Hawkeye–Security Ins. Co. v. Vector Construction Co.,* 185 Mich.App. 369, 378, 460 N.W.2d 329 (1990). Here, however, more than simply defective workmanship is at issue. In *Hawk-*

*eye,* suit had been brought against the insured Vector Construction Company for removal and repouring of 13,000 yards of defective concrete that Vector had poured in a waste water treatment plant. No allegation was made that Vector's defective concrete had resulted in damage to any property other than its work product. This fact was deemed dispositive as the *Hawkeye* court distinguished *Bundy Tubing Co. v. Royal Indemnity Co.,* 298 F.2d 151 (6th Cir.1962) (an "accident" or "occurrence" was found to have occurred where defective tubing resulted in leakage that caused damage to other property).

■ This distinction has recently been preserved and clarified in *Calvert Ins. Co. v. Herbert Roofing and Insulation Co.,* 807 F.Supp. 435, 437–38 (E.D.Mich.1992). In a well-reasoned opinion, the *Calvert* court harmonized *Hawkeye* and *Bundy,* summarizing its holding as follows:

> When the damage caused by an insured's defective workmanship is unforeseen and unexpected by the person injured thereby, the damage is accidental. Thus the property owners in *Bundy* whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the

damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy.

807 F.Supp. at 438 (footnote omitted). This Court agrees with the *Calvert* analysis. See also *J.Z.G. Resources, Inc. v. King,* 987 F.2d 98, 103 (2nd Cir.1993).

The Indiana claims against TAS seek recovery for fire damage to Sohn's business premises beyond the costs of merely replacing or correcting the defective fire/smoke detection system. Indiana alleges the defective fire/smoke detection system caused or contributed to the extensiveness of the fire damage. The damage allegedly caused by TAS's defective workmanship was unforeseen and unexpected, *ergo* "accidental." It follows that TAS's alleged liability is premised on an "occurrence," and coverage, as defined in the CCW, is triggered.

■ First Mercury contends, however, that coverage is expressly excluded under CCW exclusion paragraph (p): "This insurance does not apply to bodily injury or property damage included within the completed operations hazard or the products hazard."[3]

---

**3.** These hazards are defined in the policy as follows:

"**Completed operations hazard**" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations"; ...

"**Product hazard**" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others; ...

First Mercury contends that Indiana's claims against TAS are premised on alleged defects in the product installed by TAS and in its manner of installation. Inasmuch as TAS had relinquished possession of the product to Sohn and had completed the installation in 1983, paragraph (p) is said to exclude coverage for the liability Indiana seeks to impose on TAS.

First Mercury's argument is sound, for the most part. The paragraph (p) "completed operations hazard" and "products hazard" exclusion is clear, unambiguous and must be enforced as written. It effectively excludes coverage for liability premised on defective materials or defective installation. However, subrogee Indiana's claims against TAS are also premised in part on allegations of defective monitoring. Under the 1983 TAS–Sohn contract, TAS agreed to provide "complete system monitoring and service," in consideration of Sohn's advance payment of $250 per quarter. This contractual monitoring duty appears to have been maintained at least through the time of the fire in 1987. That is, the performance of this duty was continuing.

Liability comes within the completed operations exclusion only if it arises out of operations to be performed by TAS under the contract which "have been completed." The definition of "completed operations hazard" further specifies: "Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed." First Mercury contends this definition is broad enough to encompass TAS's continuing monitoring and servicing responsibilities and to render them a "completed operation."

Yet, clearly, TAS's continuing responsibilities were not merely attendant to its duty to perfect installation and did not exist solely "because of any defect or deficiency." They were contractually assumed duties in consideration of service fees paid over and above the system installation costs. They are duties that continued in effect whether any defect or deficiency in the system was identified or not.

The express contractual nature of these ongoing responsibilities also removes them from the rule of *St. Paul Ins. Co. v. Bischoff*, 150 Mich.App. 609, 389 N.W.2d 443 (1986). In *Bischoff*, an identical completed operations exclusion was under consideration. Where the insured John Bischoff was alleged to be liable for a substantial fire loss caused by his negligent installation of an alarm system, the completed operations exclusion was deemed to exclude coverage even though Bischoff had twice been called to adjust the system during the three months after installation, and even though the second service call was made a mere three weeks prior to the fire. The facts showed, however, that Bischoff assumed responsibility to adjust the system as a complementary service attendant to installation. Bischoff had no continuing contractual duty to monitor and service. His post-installation service was thus properly deemed, under the exclusion language, to be corrective service "because of any defect or deficiency" in connection with the otherwise complete installation.

Here, in contrast, TAS's monitoring and service responsibilities were the function of an explicit continuing contractual agreement. The monitoring and service "operations" were thus not completed, but ongoing. To the extent TAS's alleged liability for Sohn's loss is premised on negligent or defective performance of these ongoing responsibilities, it is not excluded from coverage under the completed operations exclusion. To this extent, First Mercury has a continuing duty to defend TAS and, should TAS be found liable on this basis, a duty to indemnify.

■ First Mercury further contends that coverage is limited by CCW exclusion paragraph (o): "This insurance does not apply to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." Thus, First Mercury contends coverage does not extend to TAS's alleged liability for the cost of replacing the fire/smoke detection system. First Mercury's contention is consistent with the clear import of the exclusion.

Defendants do not challenge the meaning or facial applicability of paragraph (*o*), but argue that First Mercury waived its right to enforce it by failing to refer to the exclusion in its reservation of rights letter dated July 23, 1990. In the letter, First Mercury agreed to undertake TAS's defense against subrogee Indiana's claims, but expressly and specifically reserved its rights under CCW exclusion paragraph (p). The letter does not mention paragraph (*o*), but provides:

> However, by undertaking the defense of Telephone Alarm Systems, Inc., First Mercury Syndicate, Inc. does not waive or relinquish any rights or defenses contained within the subject policy, including, but not limited to, those enumerated above, and to the contrary, specifically reserves all rights and defenses as provided under the subject policy of insurance, including the right to withdraw its defense of Telephone Alarm Systems, Inc. at any time, if it is found that First Mercury Syndicate, Inc. has no duty to defend or indemnify Telephone Alarm Systems, Inc. for the allegations brought against it by Indiana Insurance Company, as Subrogee of Sohn Linen.

The general rule under Michigan law is that a denial of liability under an insurance policy on specified grounds constitutes a waiver of other defenses. *Jones v. Jackson National Life Ins. Co.*, 819 F.Supp. 1372, 1377 (W.D.Mich.1993); *Lee v. Evergreen Regency Cooperative*, 151 Mich.App. 281, 285, 390 N.W.2d 183 (1986), *lv. denied*, 425 Mich. 875 (1986). The general rule does not apply in this case for three reasons. First, First Mercury did not, in the reservation of rights letter, deny liability outright, but undertook its duty to defend, while reserving its rights under the policy. Second, First Mercury expressly reserved "all rights and defenses" under the policy. Third, to preclude First Mercury from asserting the paragraph (*o*) exclusion would be to expand coverage under the policy to protect TAS against risks expressly excluded in the parties' agreement. The "doctrine of estoppel and waiver" should not be invoked where to

do so would have the effect of creating a liability contrary to the express provision of the parties' contract. *Jones, supra,* 819 F.Supp. at 1378; *Lee, supra,* 151 Mich.App. at 285–88, 390 N.W.2d 183.

The Court concludes that First Mercury did not waive its right to assert the paragraph (*o*) exclusion and is not estopped from doing so. The paragraph (*o*) exclusion is applicable and, consistent with its terms, limits the indemnification coverage available to TAS.[4]

Finally, defendants contend the CCW definition of reduced general liability coverage is not complete. Pursuant to the CCW, if there is not a valid written contract between TAS and its customer containing the liquidated damages clause, then (1) the endorsements describing "Personal Injury Liability Insurance, Broad From Property Damage, Contractual Liability Insurance (limited) and Errors and Omissions" are deleted; and (2) Items I and III of the endorsement describing "Comprehensive General Liability Insurance," L–6395a, are replaced by provisions set forth in detail in the CCW. "Items I and III" purport to completely define the scope of comprehensive general liability coverage and the limits of First Mercury's liability, and the CCW replacement provisions purport to do the same. Nonetheless, defendants urge the Court to look beyond the definitional provisions and to find a basis for more expansive coverage in the "schedule" which appears on the front of endorsement L–6395a. Inasmuch as the schedule is not deleted or replaced pursuant to the CCW, defendants contend it remains effective to define the scope of coverage.

The schedule is a chart which, in relevant part, reflects the *insured's* declaration and description of hazards for which it seeks general liability coverage and for which First Mercury assumes the risk. It also reflects the bases for the insurance premium charged. It does not purport to define the nature or extent of coverage and cannot rea-

---

4. This same analysis applies to CCW exclusion paragraph (n) as well. See note 1, *supra*. While paragraph (n) is not mentioned in First Mercury's complaint for declaratory judgment, it is included in the parties' arguments to the Court and may ultimately come into play if TAS is held liable in the pending state court action.

sonably be understood to modify the explicit definitional provisions contained on the reverse side of the L–6395a or those which replace them pursuant to the CCW. Defendant's argument to the contrary, presented as an afterthought through supplemental briefing, is patently unreasonable and is rejected.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes there is no genuine issue as to any material fact and that both First Mercury's and defendants' cross-motions for summary judgment must be granted in part and denied in part. The result is this Court's declaration that First Mercury is liable under the terms of the policy to defend and indemnify TAS with respect to any liability it may have for property damage sustained by Sohn that was caused by TAS's defective monitoring of the fire/smoke detection system—excluding damage to, and the cost of replacing, the TAS fire/smoke detection system.

A judgment order consistent with this opinion shall issue forthwith.

### DECLARATORY JUDGMENT

In accordance with the Court's written opinion of even date,

IT IS HEREBY ORDERED that the motion of plaintiff First Mercury Syndicate, Inc., for summary judgment is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that the motions of defendants Telephone Alarm Systems, Inc., and Indiana Insurance Company for summary judgment are **GRANTED** in part and **DENIED** in part.

More specifically, the parties' cross-motions for summary judgment are complementarily **GRANTED** in part and **DENIED** in part so as to yield this final **DECLARATORY JUDGMENT,** declaring the rights of the insured Telephone Alarm Systems and the responsibilities of the insurer First Mercury Syndicate, as follows:

IT IS HEREBY DECLARED AND ADJUDGED that plaintiff First Mercury Syndicate has the duty, under the terms and conditions of its contract of insurance with defendant Telephone Alarm Systems, policy no. DOL–06213, and particularly, pursuant to the Customer Contract Warranty Endorsement, to defend and indemnify Telephone Alarm Systems with respect to any liability it is alleged to have and may be found to have in *Indiana Insurance Company v. Telephone Alarm Systems, Inc.*, Ingham County Circuit Court No. 89–65210–CK, for property damage sustained by Indiana Insurance Company's subrogor Sohn Linen Service in the fire of May 1987, that proximately resulted from Telephone Alarms Systems' defective monitoring of the fire/smoke detection system which it had installed and contractually agreed to monitor—excluding damage to, and the cost of replacing, the Telephone Alarm Systems fire/smoke detection system.