**LANSING BOARD OF WATER AND LIGHT, an administrative agency of the City of Lansing, Plaintiff,**

v.

**DEERFIELD INSURANCE COMPANY, Defendant.**

**No. 5:00–CV–131.**

United States District Court, W.D. Michigan, Southern Division.

Feb. 7, 2002.

John A. Yeager, Willingham & Cote, PC, East Lansing, MI, Mary Dwyer, Lansing Board of Water and Light, Lansing, MI, for plaintiff.

James W. Smith, Dietrich, Smith, Howard & Vander Roest, Kalamazoo, MI, Armando Carlo, Scott O. Reed, Karen A. Reardon, Reardon, Golinkin & Reed, Chicago, IL, for defendant.

## OPINION

ENSLEN, District Judge.

· This matter is before the Court on Plaintiff Lansing Board of Water and Light's Motion to Dismiss Defendant Deerfield Insurance Company's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court will deny in part and grant in part. This matter is also before the Court on Defendant Deerfield Insurance Company's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), which the Court will deny.

Plaintiff is suing for declaratory judgment pursuant to 28 U.S.C. § 2201. In addition, Defendant has made Counterclaims against Plaintiff, and the Court has diversity jurisdiction over those claims. After reviewing the filings with respect to the two motions before the Court, the Court does not feel that oral argument is necessary. *See* L. Civ. R. 7.2(d).

## I. Standard of Review and Applicable Federal Rules of Evidence

### A. Plaintiff's Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The allegations of the complaint must be construed in the light most favorable to the plaintiff. *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 446 (6th Cir. 2000).

The rules generally require only a "short and plain statement of the claim" and not detailed allegations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The complaint, however, "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy*

*Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quotations omitted) (emphasis in original). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory,* 220 F.3d at 446.

## B. Defendant's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.,* 477 U.S. at

323, 106 S.Ct. 2548 (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. Facts

This is a dispute involving insurance coverage. Many of the facts are recited in the Court's earlier Opinion and Order of March 21, 2001, but facts pertinent to the motions currently before the Court are reiterated. The predecessor of Defendant Deerfield Insurance Company (Deerfield), First Reinsurance of Hartford, insured Plaintiff from April 27, 1998 to April 27, 1999 under an insurance policy titled Public Officials Liability Insurance, policy number TCB 73506.

Plaintiff Lansing Board of Water and Light (BWL), an administrative agency of the City of Lansing, was engaged in a project to remove and dispose of asbestos at the Plaintiff's Ottawa Station Property. Plaintiff awarded the bid on the project to SCS Group, L.C. (SCS), and SCS subcontracted portions to Performance Abatement Services, Inc. (PAS). During the period of Plaintiff's insurance coverage, a dispute arose in this Court between SCS and PAS and Plaintiff. SCS and PAS claimed that the drawings and other information provided to them by Plaintiff regarding the asbestos project failed to indicate the true scope of the project and that PAS was forced to remove more asbestos than disclosed without proper additional remuneration. *See Performance Abatement Services, Inc. v. Lansing Board of Water and Light, SCS Group, L.C.,* 168 F.Supp.2d 720 (W.D.Mich.2001).

Plaintiff and Defendant disagree whether Defendant was required, under the terms of the Public Officials Liability In-

surance policy, to provide a defense for Plaintiff and coverage for any liability on the claims. Defendant provided a defense for Plaintiff and has paid to settle part of the claims against Plaintiff. However, Defendant also put Plaintiff on notice of specific defenses that it could assert to its duty to indemnify Plaintiff, and Defendant asserted a general reservation of rights under the policy. Later, Defendant again notified Plaintiff of additional specific defenses, and Defendant reiterated its general reservation of rights.

The policy states that Defendant is "[t]o pay on behalf of the **Insured** all **Loss** in excess of the deductible which the **Insured** shall become legally obligated to pay as a result of **Claims** first made against the **Insured** during the **Policy Period** . . . because of any **Wrongful Act** committed by the **Insured**." (emphasis in original) The policy also contains a coverage exclusion, hereinafter referred to as the "pollution exclusion," [1] precluding coverage for claims "arising out of any actual or alleged . . . removal or disposal of . . . irritants, contaminants or pollutants into or upon the land, atmosphere or water, to include groundwater." [2]

Defendant's previously filed Motion to Dismiss was denied by the Court. In the motions now pending before the Court, Defendant argues that as a matter of law, this exclusion precludes coverage of defense and liability for the claims against Plaintiff.

1. The Court attributes no general operating meaning to the term "pollution exclusion" under Michigan law, given that Michigan law requires individual application of the terms of any one "pollution exclusion," just like any other kind of contract term.

2. In its entirety, the pollution exclusion at issue here reads:

## III. Analysis of Defendant's Motion for Summary Judgment

Defendant Deerfield seeks summary judgment on Count IV of its Counterclaim, which asks for indemnification of its defense costs of $360,339.01 in defending Plaintiff BWL in the underlying litigation and the payment of $1.8 million in a settlement, plus pre-judgment interest pursuant to Michigan law. Defendant claims in Count IV that it is entitled to indemnification of these amounts because the claims in the underlying litigation were excluded from policy coverage, pursuant to the policy's pollution exclusion.

The parties agree that Michigan law applies to this controversy. In the absence of any indication in the record that another state's law should apply, the Court will apply Michigan law to this dispute. The Court will deny Defendant's Motion for Summary Judgment.

## A. Whether Defendant Waived Its Defense Based on the Pollution Exclusion

■ After Defendant Deerfield learned of the claims in the underlying litigation against Plaintiff BWL, Defendant sent Plaintiff a letter, dated July 30, 1998, stating its intent to provide a defense for Plaintiff. (Compl. Exh. D at 3.) Defendant's letter also contained a general reservation of its rights to contest coverage and asserted at least seven different coverage arguments. (*Id.*)

> Any *Claim* arising out of any actual or alleged generation, storage, transportation, discharge, dispersal, escape, treatment, removal or disposal of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon the land, atmosphere or water, to include groundwater. (Emphasis in original.)

Plaintiff then sent a letter to Defendant, dated August 17, 2000. (Compl.Exh. E.) Plaintiff's letter requested that Defendant withdraw its reservation of rights and asked Defendant to acknowledge what Plaintiff asserted were Defendant's obligations and duties under the Policy. (*Id.*)

Defendant responded to Plaintiff's August 17, 2000 letter with an August 31, 2000 letter. (Compl.Exh. F.) In this letter, Defendant added three other reservation of rights theories, but reasserted its acceptance of the duty to defend Plaintiff in the underlying litigation to this case. (Compl. Exh. F at 7.) In addition to reasserting its original reservation of rights and adding others in this letter, Defendant stated that in light of the pollution exclusion clause covering irritants, it "will consider whether it will initiate coverage litigation" at the conclusion of the underlying suit. (*Id.*)

■ The Court finds that under Michigan law, an insurance company that undertakes a defense of its insured with a general reservation of rights does not waive any potential defenses to coverage, if the insured was not prejudiced in asserting its position of coverage.[3] The Michigan Supreme Court has held that generally, once an insurance company *denies* coverage, it is estopped from or has waived assertion of new defenses. *Kirschner v. Process Design Associates, Inc.,* 459 Mich. 587, 592 N.W.2d 707, 709 (1999). The *Kirschner* Court continued by noting that

... when an insurance company undertakes the defense of its insured, it has a duty to give reasonable notice to the *insured* that it is proceeding under a

reservation of rights, or the insurance company will be estopped from denying its liability. The application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy.

*Id.* at 710–11 (emphasis added by *Kirschner* Court) (citations omitted). The *Kirschner* Court expressed an interest that an insured receives "reasonable notice" of an insurer's intention to deny liability, presumably out of a desire to prevent prejudice to an insured. In addition, there is an indication that courts, if possible, should consider disputes over coverage on their merits, *i.e.,* considering applicable defenses, because insurance contracts should generally be enforced with an eye toward the original intent of the contracting parties. These competing principles of law are resolved with the conclusion that an insurance company that undertakes a defense of its insured with a general reservation of rights does not waive any potential defenses to coverage, providing the insured is not prejudiced in asserting its position that coverage is due.

This conclusion was also reached by other judges of this Court when applying Michigan law in situations similar to this one. *See First Mercury Syndicate, Inc. v. Telephone Alarm Sys., Inc.,* 849 F.Supp. 559 (W.D.Mich.1994) (McKeague, J.); *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 417 (W.D.Mich.1993)

---

**3.** Unfortunately, the Michigan state case most on point here, *Havens v. Roberts,* does not contain specific enough facts to guide this Court. There, the Michigan Court of Appeals held that an insurer could raise an exclusionary clause as a defense, after the insurer defended the original action against its insured, since the defense had been "preserved." *Ha-*

*vens v. Roberts,* 139 Mich.App. 64, 360 N.W.2d 183, 184 (1984). The *Havens* Court only notes that the insurer "reserved the right to deny coverage," but does not note whether the exclusionary clause was reserved as a specific defense or whether the reservation of rights was general. *See id.* at 183.

(Gibson, C.J.). In *First Mercury*, the Court refused to consider the insurer's defense waived where the insurer defended the insured, while expressly reserving "all rights and defenses" available to it under the terms of the policy. *First Mercury*, 849 F.Supp. at 568.

Even closer to the instant case, a defense was held not waived where the insurer in *Action Auto* mentioned the specific defense at issue in its second reservation of rights letter two months prior to trial, where the first reservation of rights letter contained a general reservation of rights. *Action Auto*, 845 F.Supp. at 424. Importantly, then-Chief Judge Gibson also noted that the insured had not suffered any prejudice in arguing that it was due coverage by the insurer's notice of its defense. *Id.*

Therefore, Defendant did not waive its defense that the pollution exclusion precludes coverage. Defendant promptly undertook defending Plaintiff and immediately put Plaintiff on notice of a general reservation of its rights under the policy. Moreover, Plaintiff has been on notice that Defendant intended to use the specific defense of the pollution exclusion since August 2000, and Plaintiff has not argued that it was prejudiced by this method of notice.

**B. Whether the Pollution Exclusion Applies to Exclude Coverage of Plaintiff's Claim**

█ Thus, the Court will consider whether the pollution exclusion at issue applies to exclude coverage of Plaintiff BWL's claim. The pollution exclusion precludes coverage for claims "arising out of any actual or alleged ... removal or disposal of ... irritants, contaminants or pol-

lutants into or upon the land, atmosphere or water, to include groundwater."

Defendant Deerfield argues that the underlying litigation involves Plaintiff's liability for removal and disposal of irritants on its property, namely asbestos. As a result, Defendant's assertion is that this type of liability is not covered in the policy it issued Plaintiff.

Plaintiff argues that the underlying litigation involves a case of a cost overrun, in that it was accused of misrepresenting facts concerning the amount of asbestos contained at its facility. This alleged misrepresentation caused removal of the asbestos to be much more expensive than PAS contemplated when it contracted with Plaintiff. But once asbestos removal began, PAS completed all of the removal work, and then PAS sued Plaintiff for additional compensation for removal of the additional asbestos. According to Plaintiff's argument, it is irrelevant for purposes of coverage that the subject of the contract concerned the removal of a polluting element. In other words, PAS claims an injury from Plaintiff's alleged failure to disclose certain information, not an injury caused by pollution. Thus the claim did not "aris[e] out of" the removal or disposal of pollutants. This is the position that the Court finds to be correct as a matter of law.

The facts of this case are similar to those in *Owens Corning v. National Union Fire Ins. Co.*, 1998 WL 774109 (6th Cir. Oct.13, 1998).[4] There, Owens Corning was accused by its shareholders of misrepresenting or failing to disclose the company's future financial exposure to asbestos claims. *Id.* at *2. The insurance policy

---

4. The *Owens Corning* Court was applying Ohio law. 1998 WL 774109, at *3. However, this Court examines the case because it is factually analogous to the instant case. In

addition, this Court does not believe that the difference between Michigan and Ohio law on interpretation of insurance policy exclusions, at least on this particular point, is substantial.

there contained an exclusion precluding coverage "based upon, arising out of, or related to" "[a]sbestos or any asbestos related injury or damage" or removing asbestos in any fashion. *Id.* The insurance company claimed that the exclusion applied because the underlying suit arose out of asbestos. *Id.* But the Sixth Circuit reversed a grant of summary judgment for the insurance company, finding that the claims in the underlying suit did not "aris[e] out of" asbestos but out of the allegation that officers and directors of the insured withheld information to which shareholders were entitled. *Id.* at *4.

The Sixth Circuit found that the "arising out of" language, which is also contained in Plaintiff's insurance policy, requires a higher causal connection between the asbestos and the underlying claim than a "but for" nexus. *Owens Corning,* 1998 WL 774109, at *4. As a result, the Sixth Circuit found that there was not enough of a causal link between asbestos and the nature of the underlying claims. "The [underlying] claim was not based, for example, on Owens Corning's failure to place warning labels on packages containing asbestos. Rather, the [underlying claim alleged] that the directors' and officers' misrepresentations deprived of the opportunity to make informed decisions regarding their financial holdings in Owens Corning.... [T]he harm claimed as the basis of the [underlying] suit stemmed from the alleged misrepresentations ...." *Id.* at *5.

Another judge of this Court also found that the cause of a claim under Michigan law is only a close cause, and not a distant one, with respect to insurance cases. *Hagger v. United States Life Ins. Co.,* 1:01–CV–71 (W.D.Mich. August 6, 2001) (Bell, J.) (*see* Supplemental Brief in Support of Lansing Board of Water and Light's Motion to Dismiss Counterclaim (Dkt. No. 36), Ex. B).[5]

> Michigan courts have established strict limits on the scope of proximate cause in insurance cases. The Michigan Supreme Court has declared that the issue of causation in insurance contract disputes differs from torts in that "you are not to trouble yourself with distant causes .... [I]n insurance cases the concern is not with the question of culpability or why the injury occurred, but only with the nature of the injury and how it happened."

*Hagger,* Ex. B, at 5 (quoting *Vanguard Ins. Co. v. Clarke,* 438 Mich. 463, 466 n. 3, 475 N.W.2d 48 (1991)). There, the insurance policy only provided coverage if the insured was killed while "driving or riding" a vehicle. *Hagger,* Ex. B, at 1. The insured was involved in a non-fatal car accident, and while standing outside of the car shortly after the accident, was fatally injured when another car struck his disabled car. *Id.* The Court held there was no insurance coverage because the insured's death was a result of the second accident where he was a pedestrian, not the first accident where he was in the car, even though the original accident caused the decedent to be there in the first place. *Id.* at 5–6.

Thus, asbestos was too distant a cause of the underlying claim against Plaintiff for that claim to have "arisen out of" asbestos. Asbestos was *one* cause of the claim, in that without its existence at the Ottawa Station, Plaintiff would have not contracted with PAS in the first place. But the *immediate* cause of the claim was alleged misrepresentation.

---

5. This Court notes that this reading of Michigan law is the same as the Sixth Circuit's reading of Ohio law on this point in *Owens Corning.*

In a case applying Michigan law, another judge of this Court found that a pollution exclusion applied to preclude coverage under facts that are distinguishable from the instant case. *See Progressive Architect/1Engineers/Planners, Inc. v. Security Ins. Co. of Hartford*, 1994 U.S. Dist. LEXIS 11589 (W.D.Mich. July 18, 1994) (Miles, J.). There, the pollution exclusion excluded coverage for "claims or expenses resulting from professional services performed by [the insured], which claims or expenses arise from … the actual, alleged or threatened discharge, dispersal, release or escape of 'pollutants[.]' " *Id.* at *2. The insured, an architectural and civil engineering firm, was hired by Meijer, Inc. to design a mound, called a berm, on Meijer's property to be used to dispose of soil contaminants by encapsulating them in clay and to supervise the placement of the contaminants in the berm. *Id.* at *3. The insured subsequently allowed subcontractors performing the work to place polluting debris larger than six inches in length, as opposed to much smaller soil contaminants, found on the property in the berm, which was contrary to the insured's design of the berm. *Id.* at *4. This required Meijer to pay for environmental remediation of the property. *Id.*

Meijer alleged that the insured failed to properly administer the contracts for construction of the berm and to properly design the berm, such that the insured failed to prevent disposal of inappropriate pollutants in the berm. *Progressive*, 1994 U.S. Dist. LEXIS 11589, at *6. Importantly,

however, Meijer also alleged that the insured "improperly approv[ed] or direct[ed] the burial of barrels and other debris in the berm." *Id.* The *Progressive* Court found that the pollution exclusion applied to this claim because it found that Meijer's claims against the insured "arose from 'the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants" ' as specified by the policy." *Id.* at *11.[6]

In *Progressive*, the insured was accused of "improperly approving or directing the burial of barrels and other debris in the berm," and so one of its direct acts of alleged wrongdoing was "the actual, alleged or threatened discharge, dispersal, release or escape of 'pollutants.' " *Progressive*, 1994 U.S. Dist. LEXIS 11589, at *6, *11. In other words, the causal connection between the allegations of the claim and the pollution caused by the insured was not broken by an intervening event. This is unlike the instant case where the claim against Plaintiff is not predicated on allegations that Plaintiff caused any pollution to occur.

■ It is true that under Michigan law, pollution clauses are not blindly limited in application to "traditional" forms of environmental pollution, but instead should be applied according to their terms. *McKusick v. Travelers Indem. Co.*, 246 Mich. App. 329, 632 N.W.2d 525, 531 (2001). While this is a correct general proposition of Michigan law, the particular terms of the pollution exclusion in Plaintiff's policy do not preclude coverage.[7]

**6.** However, the *Progressive* Court later reversed its grant of summary judgment to the insurance company because the insurance company had admitted in a letter to the insured that it owed the insured a duty of indemnity for the cost of removing the pollutants from the berm. *Progressive*, 1:93–CV–539 (W.D.Mich. Dec. 13, 1994) (Miles, J.), *cited in* 103 F.3d 130, at *5–*6 (6th Cir. Dec.

16, 1996). Moreover, in light of the insurer's admission, the Sixth Circuit considered the issue of liability under the policy settled and subsequently declined to address the issue of whether as a matter of law, the policy would have afforded coverage to the insured. *Progressive*, 103 F.3d 130, at *8.

**7.** Defendant also cites *Protective Nat'l Ins. Co. of Omaha v. City of Woodhaven*, 438 Mich.

The pollution exclusion in *McKusick* was "more broad than the exclusions contemplated in these, as well as most other, cases because this exclusion applies when pollutants arise from the insured's work or products." *Id.* at 530. Indeed, the exclusion there excluded claims "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... [w]hich arises out of 'your work ...;' or 'your product ....'" *Id.* at 529. Applying the terms of this particular pollution exclusion, the *McKusick* Court found the exclusion to apply to the insured's claim. *Id.* at 531. The insured's hose-delivery system failed, causing a chemical to spray employees of the company who purchased the insured's hose-delivery system. *Id.* at 527.

Because of the policy's "arises out of ... 'your product' ..." language, the failure of the hose-delivery system was a cause of the ultimate harm that excluded the event from policy coverage, since that specific pollution exclusion's clear intent was to exclude damage caused by pollutants released as a result of failure of the insured's products or work. *Cf. McKusick*, 632 N.W.2d at 531. This type of language is not present in the pollution exclusion of the instant case. Moreover, in *McKusick*, the actual release of the pollutants was the direct cause of the injured employees' claims. This is unlike the instant case, where the presence of asbestos was not essential to PAS's claim that Plaintiff mis-represented facts and obtained an unfair contract. Asbestos was merely the subject of the contract.

Furthermore, the Court fails to see the relevance that asbestos may or may not have been released into the environment during PAS's work for Plaintiff. No interested party has made any claims against Plaintiff for damages arising out of alleged contamination. PAS's claim that Plaintiff acted wrongfully during their contract negotiations, causing PAS financial harm, does not depend upon whether some party released asbestos into the environment during this project. Therefore, PAS's claim does not "arise out of" contamination.

As stated above, the Court finds that the "pollution exclusion" does not operate to bar coverage of Plaintiff's claim. Therefore, the Court will deny Defendant summary judgment on Count IV of its Counterclaim.

## IV. Analysis of Plaintiff's Motion to Dismiss

Applying Michigan law, the Court will deny in part and grant in part Plaintiff's Motion to Dismiss Defendant's Counterclaims. The Court will dismiss Count IV, but deny dismissal as to Counts I–III.

■ As a preliminary matter, Plaintiff BWL asserts that Michigan law would bar an insurance company from obtaining indemnification from its insured even upon a

---

154, 164, 476 N.W.2d 374, 378 (1991) for the proposition that pollution clauses should be applied according to their individual terms. The Court agrees that Michigan law requires such a result, but again, does not agree that *City of Woodhaven* is on point for the precise issue before the Court. The city was sued by a party claiming injury after exposure to pesticides that the city sprayed to control insects. *City of Woodhaven*, 438 Mich. at 156, 476 N.W.2d 374. The policy exclusion would not cover "bodily injury or property damage aris-

ing out of the discharge ... of ... irritants, contaminants or pollutants ...." *Id.* at 160, 476 N.W.2d 374. However, the city did not claim in that case that the claim against it did not directly arise out of bodily injury, but it claimed that an exception to the policy exclusion applied. *Id.* at 161, 476 N.W.2d 374. The Michigan Supreme Court found against the city on the issue of whether the exception to the pollution clause applied and thus found no coverage. *Id.* at 162, 476 N.W.2d 374.

later finding of non-liability for the insurer, unless an express agreement were made to the contrary between the insured and the insurance company. No Michigan case has directly dealt with the issue of whether, in absence of an express agreement, an insured can be made to indemnify the insurer if it is later judicially determined that the insurer had no liability coverage obligation. Defendant Deerfield argues that Michigan courts would require indemnification by the insured because of the favored status of settlements and because insurers are permitted to seek indemnification against third parties when appropriate under Michigan law.

Dismissal of all Counts of Defendant's Counterclaim would have been appropriate if Defendant did not allege facts that an express agreement exists or that would permit this Court to imply an agreement under Michigan law between Plaintiff and Defendant. Plaintiff asserts that there was no express agreement and no circumstances in the instant case which would permit this Court to imply an agreement between Plaintiff and Defendant.

However, Defendant represents that there was an express agreement between itself and Plaintiff that Plaintiff would later indemnify Defendant if Defendant won the coverage determination. (*See* Defendant Deerfield Insurance Company's Response to Plaintiff's Motion to Dismiss Counterclaim, at 5 (Dkt. No. 22)) ("... [Defendant Deerfield] would not have agreed to fund the settlement if [Plaintiff,] the Board[,] had not agreed to permit Deerfield its day in court on these issues."). As such, Plaintiff cannot prevail on a Motion to Dismiss on this argument since Defendant has alleged existence of facts which would preclude Plaintiff's defense to indemnification.

## A. Count I—Indemnification for Full Amount of Settlement Payment

█ The coverage clause states that Defendant has contracted:

> To pay on behalf of the *Insured* all *Loss* in excess of the deductible which the *Insured* shall become legally obligated to pay as a result of *Claims* first made against the *Insured* during the *Policy Period* or Extended Reporting Period, if purchased, because of any *Wrongful Act* committed by the Insured.

(*See* Plaintiff and Counter–Defendant Lansing Board of Water and Light's Motion to Dismiss Counter-claim, at 7 (Dkt No. 20) (emphasis in original).) In the definitions section of the policy, certain key terms are defined, including:

> "*Wrongful Act* means any actual or alleged act, error, misstatement, misleading statement or omission, neglect or breach of the *Insureds'* duties arising solely from the *Insureds'* discharge of their duties on behalf of the *Public Entity* individually or collectively, or any matter claimed against any *Insured Persons* solely by reason of their being or having been duly elected or appointed officials."

(*See id.* at 8 (emphasis in original).) Plaintiff can only succeed in its motion to dismiss this count if the underlying action involves a "wrongful act" as it is defined under the policy as a matter of law.

In its second-amended complaint in the underlying action, PAS alleged that Plaintiff "had material information within the knowledge of its personnel or within the possession of the [Plaintiff], which the [Plaintiff] failed to disclose and did not give to bidders, including PAS," and alleges failure to disclose drawings and other documents detailing the full existence of asbestos throughout the property involved. (*See* Plaintiff and Counter–Defendant Lansing Board of Water and Light's Motion to

Dismiss Counter-claim, at 9 (Dkt No. 20).) Plaintiff argues that these allegations constitute a "wrongful act" as a matter of law because they involve "alleged act, error, misstatement, misleading statement or omission, neglect or breach of the Insured's duties ..." in that Plaintiff is accused of making material non-disclosures when soliciting bids for asbestos removal work in its facility. As a matter of law, the Court finds that Plaintiff is correct in its assertion that complaints of this nature made against Plaintiff constitute "wrongful acts" under the policy.

However, it is also true that some of PAS's complaints against Plaintiff were those which do not require proof of non-disclosure or other acts that might constitute "wrongful acts" under the policy in order for PAS to recover. PAS's complaints which are strictly unjust enrichment claims, for example, where PAS complains that Plaintiff accepted labor and materials that the contract did not contemplate, would not encompass any acts of Plaintiff that constitute "wrongful acts" under the policy.

Therefore, Defendant is entitled to recover the amount of the settlement that does not represent payment to PAS or SCS for a "wrongful act." In theory, this amount could be the entire amount of the settlement, if the value of the additional work was the entire amount of the settlement. In the alternative, this amount could be none of the settlement, or only part of it. Nonetheless, Defendant has alleged enough to avoid dismissal of this Count, and the Court will deny Plaintiff's Motion with respect to this Count.

## B. Count II—Contribution for Portion of Settlement Payment

Defendant Deerfield alleges in the alternative that some portion of the settlement payment was not covered "Loss" under the policy. Defendant asserts that it is not liable for the entire settlement payment on one of three theories, but since the Court finds that Defendant has sufficiently stated a cause of action on the first of the three theories, the Court will not address the other two theories.

Defendant asserts that since the Plaintiff BWL received the value of the additional asbestos abatement, the only possible covered "Loss" it suffered is the amount above the value of the additional work it received. For reasons explained in the section on Count I, Defendant has sufficiently alleged facts such that dismissal is inappropriate. This is because as a matter of law, the Court has found that any amount of the settlement which constitutes the actual value of the asbestos removal work which Plaintiff would have agreed to pay is not covered "Loss" because no "Wrongful Act" by Plaintiff would be present. As such, the Court will not dismiss this Count.

## C. Count III—*Quantum Meruit* Claim, or Unjust Enrichment

■ Defendant Deerfield asserts that it would be inequitable to allow Plaintiff BWL to receive the value of the additional amount of asbestos abatement without paying for it. Further, Defendant cites the two elements of *quantum meruit*, (1) that Plaintiff, in this case, received a benefit from Defendant, and (2) that it would be inequitable for Plaintiff to retain it. *In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618, 670 (E.D.Mich.2000) (citing *Hollowell v. Career Decisions, Inc.*, 100 Mich.App. 561, 298 N.W.2d 915, 920 (1980)). Defendant argues that it has alleged those two elements and could prove a set of facts consistent with those elements.

■ Plaintiff argues that it has an express contract with Defendant to pay its

liability in the event of a "wrongful act" claim made against Plaintiff, and thus, an action in *quantum meruit* cannot lie. Michigan law, however, permits an action in *quantum meruit,* even in the face of an express contract, where the performance of additional work or benefit not contemplated in the express contract is present. *See, e.g., In re Dunnigan's Estate,* 282 Mich. 500, 276 N.W. 532, 533 (1937); *Mullally v. Bey,* 15 Mich.App. 248, 166 N.W.2d 500, 503 (1968).

If settlement of the "wrongful act" claim required Defendant to pay out additional funds beyond PAS's claims based on an actual or alleged "wrongful act," *i.e.,* the value of the additional work done by PAS, Plaintiff received an additional benefit from Defendant that was not contemplated in its insurance contract with Defendant. Therefore, a *quantum meruit* claim could be sustained by Defendant. The Court will deny Plaintiff's Motion to Dismiss this count of Defendant's Counterclaim.

### D. Count IV—Indemnification of Defense Costs and Settlement Payment

As analyzed in the section discussing Defendant's Motion for Summary Judgment on Count IV, the pollution exclusion in Plaintiff's policy does not preclude coverage in the instant case as a matter of law. There is, therefore, no set of facts that Defendant could prove to win on this claim, and the Court will dismiss this count.

### V. Conclusion

Therefore, the Court will deny Defendant's Motion for Summary Judgment on Count IV of its Counterclaim. Further, the Court will deny in part and grant in part Plaintiff's Motion to Dismiss, dismissing Count IV, but not Counts I–III. An order will be so entered.