NATIONAL UNION FIRE INSUR-
ANCE COMPANY OF PITTS-
BURGH, PA, Plaintiff,

v.

U.S. LIQUIDS, INC., Michael P. Lawlor,
W. Gregory Orr, Earl J. Blackwell,
Gary J. Vanrooyan, William A. Roth-
rock IV, Alfred Tyler II, James E.
McEneaney, Jr., John N. Hatsopolos,
Roger A. Ramsey, Defendants.

No. H–01–1980.

United States District Court,
S.D. Texas,
Houston Division.

April 25, 2003.

Roger L. McCleary, Megan Gabel, Pamela C. Hicks, Beirne, Maynard & Parsons, Houston, TX, for plaintiff.

John Bryant Thomas, Fred Knapp, Jr., Hicks Thomas et al., Mark K. Glasser, King & Spalding, Houston, TX, for defendants.

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

LAKE, District Judge.

The Court has reviewed the Magistrate Judge's Memorandum and Recommendation and the objections thereto and is of the opinion that said Memorandum and Recommendation should be adopted by this Court.

It is, therefore, **ORDERED** that the United States Magistrate Judge's Memorandum and Recommendation is hereby **ADOPTED** by this Court.

## MEMORANDUM AND RECOMMENDATION

JOHNSON, United States Magistrate Judge.

Pending before the court[1] are Plaintiff's Motion for Summary Judgment and Defendants' Motion for Partial Summary Judgment. Also pending is Plaintiff's Motion to Strike Portions of the Affidavit of Gary J. Van Rooyan.[2] The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendants' motion be **DENIED**.

Additionally, because the court relies on no improper statements in the affidavit, Plaintiff's Motion to Strike Portions of the Affidavit of Gary J. Van Rooyan is **DENIED**.

## I. Case Background

The dispute between the parties in this case concerns insurance coverage. Plaintiff, the insurer, brought this action against Defendants, the insured, seeking a declaration that Plaintiff is not obligated to defend or to indemnify Defendants in a consolidated class securities and shareholder derivative action filed against Defendants in federal court. Defendants counterclaimed for declaratory judgment and breach of contract.

### A. The Underlying Lawsuit

The consolidated lawsuit combines several securities actions brought by shareholders of U.S. Liquids, Inc., ("USL") and a shareholders' derivative suit brought on behalf of USL.[3] According to the securities complaint, the individual shareholders who comprise the plaintiff class either purchased the USL common stock between May 1998 and August 1999 at artificially inflated prices or acquired USL common stock in a March 1999 secondary public offering in reliance on materially false and misleading statements presented in USL documents filed with the Securities Exchange Commission ("SEC").

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Fed.R.Civ.P. 72. Docket Entry No. 46.

2. Several other nondispositive motions not addressed in this Memorandum are also pending. They are addressed separately.

3. For its account of facts related to the underlying consolidated lawsuit, the court relies

entirely on the Derivative Complaint for Violations of Fiduciary Duties and for Injunctive Relief and Damages and/or the Consolidated Complaint for Violations of the Securities Exchange Act of 1934, filed in the United States District Court for the Southern District of Texas Houston Division, Master File No. H–99–2785. *See* Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Exs. B, C. The truth of these allegations is not material to coverage analysis. *E & L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272, 275 (Tex. Ct.App.-Beaumont 1998, no pet.).

USL is a provider of intograted liquid waste management services, including collection, processing, recovery, and disposal. In 1997, USL announced its plan to become a leading national provider in the liquid waste disposal industry "by expanding through acquisitions, emphasizing continued internal growth and improving its existing operations."[4] The shareholders allege that USL began a campaign of rapid acquisition of smaller companies without regard to or disclosure of those companies' improper waste disposal practices. Although USL represented otherwise, it failed to implement regulatory controls in the companies it purchased.

One of the forty-one waste-management businesses that USL acquired between November 1996 and October 1999 was City Environmental, Inc. ("City Environmental"). Almost exactly one year into USL's ownership of City Environmental, the Federal Bureau of Investigations ("FBI") began an investigation of the Detroit plant based on confidential information from an employee who reported that USL knowingly discharged liquid hazardous waste into Detroit's sewer system and illegally transported and disposed of hazardous waste. Based on the detailed reports of illegal activity from five cooperating witnesses and a search of the Detroit facility, federal authorities closed a portion of the Detroit plant.

These events signaled the start of a cleanup process at the Detroit plant, a criminal investigation of USL, a revelation of illegal practices that had been actively concealed from investors and the public, and a six-day suspension of trading (followed by a decline in stock value). For the prior year, USL stock consistently enjoyed "buy" and "strong buy" recommendations from securities analysts. After the

August 1999 events, market analysts downgraded the rating of USL stock and stock value plummeted $10.75 per share. In a January 31, 2000, press release, USL announced that 1999 earnings would be substantially reduced due to the closing and cleanup costs at the Detroit facility.

The shareholders accuse USL of misrepresenting or omitting material facts in various SEC Registration Statements, Prospectuses, public documents, presentations, and press releases generated from May 1998 to August 1999. In sum, the shareholders complain that certain statements made during the period May 1998 to August 1999 were materially false and misleading in that:

1. "USL was not in compliance with applicable regulations;"

2. "the companies acquired by USL were not properly investigated by USL prior to their acquisitions, or, if they were, the illegal activities occurring at the companies ... were ignored;"

3. " 'specified handling procedures and guidelines for regulated wastes' were either illegal as written, or thwarted and not followed by USL employees at the direction of USL management;"

4. "USL employees were not properly trained in waste management procedures;"

5. "USL's proclaimed increased profitability resulted," not from "a well-planned expansion strategy," but from illegally charging customers for waste disposal services that it never actually performed, thereby inflating reported revenues and understating operating expenses;

6. USL's illegal dumping activities at the Detroit facility subjected it to substan-

4. Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. C, Consolidated Complaint for Violations of the Securities Exchange Act of 1934, p. 9 (quoting Form S–1/A filed by USL with the SEC on September 12, 1997).

tial expenditures to become compliant with federal and state laws, including cleanup costs and fines;

7. USL's revenues were materially overstated due to the illegal dumping of liquid hazardous waste into the public sewer systems and the falsification of documents and water and soil samples that were submitted to federal and state regulatory officials;

8. USL presented financial results in a manner which violated the Generally Accepted Accounting Principles.[5]

The derivative complaint presents a similar factual account of USL's illegal activities. In that action, the plaintiffs accuse USL's board of directors and several top officers of:

(i) breach of fiduciary duty in misappropriating and misusing internal, proprietary, non-public, material, adverse corporate information to personally profit by inflating USL's earnings and generating ill-gotten bonuses which were tied to earnings; (ii) failing to properly oversee or implement federal or state laws prohibiting improper waste disposal as well as USL's own policies and rules restricting the misuse of internal corporation information for such purposes; (iii) causing USL to be sued for, and to be exposed to, liability for violations of the anti-fraud provisions of the Federal Securities Laws, Federal and State environmental laws by making or allowing to be made a series of false and misleading statements to the securities markets about USL's business, financial results, governmental compliance and prospects for earnings growth; (iv) illegally dump-

ing toxic waste into America's water supply and (v) falsifying tests to deceive the government.[6]

The complaint charges the board of directors and officers with intentional and negligent breach of fiduciary duties in causing USL to violate federal securities and environmental laws, to falsify compliance with state and federal law, and to inflate earnings by engaging in illegal toxic waste disposal.

## B. *Directors, Officers and Corporate Liability Insurance Policy*

Defendants purchased a Directors, Officers and Corporate Liability Insurance Policy ("Policy") from Plaintiff. The Policy included a "Securities Plus II" endorsement to cover securities claims:

(1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company; or

(2) brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured."[7]

In one of several exclusions, the Policy denied coverage for any loss in connection with a claim:

(1) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

**5.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. C, Consolidated Complaint for Violations of the Securities Exchange Act of 1934, pp. 24, 26–31, 34–35, 37–40, 42–44.

**6.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. B, Derivative Com-

plaint for Violations of Fiduciary Duties and for Injunctive Relief and Damages, p. 1.

**7.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. A–1, Directors, Officers and Corporate Liability Insurance Policy, Endorsement No. 13.

(1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

(2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Company or its securities holders.

Pollutants include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.[8]

The policy provided for the advancement of defense costs, according to the terms of the Policy, prior to the final disposition of a claim.[9] The definition of the Policy term "Loss" covered "damages, judgments, settlements and Defense Costs." [10]

Defendants made demand on Plaintiff to defend the underlying federal lawsuit, contending that the claims raised in the consolidated complaint and the derivative complaint fall within the scope of coverage provided by the Policy. Plaintiff declined to defend Defendants, maintaining that the claims came under the Policy's pollution exclusion.

Plaintiff filed this declaratory action to determine its legal rights under the insurance contract.[11] Both parties moved the court to grant summary judgment on this matter. Defendants assert that the amount of defense costs and legal fees to which they are entitled will remain for trial.

## II. Legal Standards

This case was filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and is properly before the court on the basis of diversity jurisdiction. The parties agree that Texas law applies to their controversy. Absent any indication in the record that another state's law should apply, the court will apply Texas law.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from

---

**8.** *Id.* at ¶ 4.

**9.** *Id.* at ¶ 8.

**10.** *Id.* at ¶ 2(d).

**11.** Plaintiff relied on the pollution exclusion to deny coverage to Defendants. In its original complaint, Plaintiff again relied solely on the pollution exclusion. Since that time, Plaintiff repeatedly and persistently attempted to add six additional policy exclusions which it contends apply to this case. In November 2002, the court denied Plaintiff's motion for leave to file an untimely First Amended Complaint and struck portions of Plaintiff's untimely answer to Defendants' counterclaim which asserted the additional policy exclu-

sions as defenses. Order, Docket Entry No. 47. Immediately following that order, Plaintiff refiled its answer to Defendants' amended counterclaim, again including the stricken defenses. Plaintiff's Original Answer to Defendants' First Amended Counterclaim for Declaratory Judgment and Breach of Contract, Docket Entry No. 48. In February of this year, Plaintiff again requested leave to file an amended complaint to assert additional policy provisions, exclusions, limitations on coverage, and affirmative claims based on newly discovered evidence. Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint Based upon Newly Discovered Evidence, Docket Entry No. 72. The only policy exclusion properly before the court on summary judgment is the pollution exclusion.

pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of genuine factual issues. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

A material fact is a fact which is identified by applicable substantive law as critical to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *Id.* at 250, 106 S.Ct. 2505. When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir.2001).

### III. Analysis

The parties apparently agree that the securities and derivative claims alleged in the consolidated lawsuit fit within the Policy's definition of covered "securities claims." However, they do not agree on whether the underlying lawsuit falls within the pollution exclusion, thereby precluding coverage. The court finds that it does.

Texas law is clear that an insurer's duty to defend and its duty to indemnify are separate duties, and an insurer may have a duty to defend even when it has no duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). That is to say, allegations raised against the insured may fit within the policy coverage and trigger a duty to defend even if a subsequent finding negates the insurer's duty to indemnify. *Id.* However, if the factual allegations in an underlying complaint fall outside the policy coverage, neither duty is triggered. *See id.* at 84. In such a case, the court can decide the

indemnity issue even before a decision is made on liability in the underlying lawsuit. *Id.* (holding that, "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," a court may rule in favor of the insurer on indemnification prior to the resolution of the liability litigation); *see also Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir.1998) (applying Texas law and holding that a district court has jurisdiction to rule on the duty to indemnify before an underlying lawsuit reaches final judgment).

When contemplating whether the underlying litigation triggers policy coverage, the court examines the factual allegations in the complaint and the language of the insurance policy. *See Malone v. Scottsdale Ins. Co.*, 147 F.Supp.2d 623, 627, 629 (S.D.Tex.2001) (applying Texas law); *Griffin*, 955 S.W.2d at 82. Known as the "eight corners rule" or the "complaint allegation rule," this method requires that the court "focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition." *Malone*, 147 F.Supp.2d at 627; *see also Bailey*, 133 F.3d at 369; *Mid–Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex.App.-Waco 2000, pet. denied). The court need not decide the truth of the allegations to determine whether the facts are excluded by the insurance policy. *E & L Chipping Co.*, 962 S.W.2d at 275. The court then compares the factual allegations with the terms of the insurance policy.

When reviewing the policy terms, the court employs general rules of contract construction. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). Absent any ambiguity, the meaning imparted by the contract language can be decided as a matter of law. *Utica Nat'l*

*Ins. Co. of Tex. v. Fidelity & Cas. Co. of N.Y.*, 812 S.W.2d 656, 661 (Tex.App.-Dallas 1991, writ denied). Further, determining whether an ambiguity exists in the policy rests in the hands of the court. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).

■ To the extent possible, all provisions within the contract are read together and each is given effect so that no part of the agreement is left without meaning. *Balandran*, 972 S.W.2d at 741. The parties' intentions are to be considered only to the extent that they are evident within the document as a whole. *Id.* The wording of a contract is unambiguous if it can be given a definite or certain legal meaning. *CBI Indus., Inc.*, 907 S.W.2d at 520. If the contract is subject to only one reasonable interpretation, it is unambiguous, and the court will not consider extrinsic evidence to vary or explain the terms of the policy, but will construe the policy according to the plain meaning of the words. *Id.; Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 714 (Tex.App.-Houston [14th Dist.] 1987, no writ).

■ However, if, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer. *Bailey*, 133 F.3d at 369; *Balandran*, 972 S.W.2d at 741; *Puckett*, 678 S.W.2d at 938. In fact, if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable. *Bailey*, 133 F.3d at 369; *Toops v. Gulf Coast Marine, Inc.*, 72 F.3d 483, 486 (5th Cir.1996) (applying Texas law); *Balandran*, 972 S.W.2d at 741. The

burden of proving that coverage is barred by an exclusionary provision is borne by the insurer. *Bailey*, 133 F.3d at 369.

■ Texas courts recognize two types of ambiguity in insurance policies-patent and latent. *CBI Indus., Inc.*, 907 S.W.2d at 520. The former is evident on the face of the contract and the latter is evident only upon application of the terms of the contract to the subject matter with which it deals. *Id.* Parol evidence is admissible to determine the parties' true intent if the court finds that a latent ambiguity arises when the policy terms are applied to the factual allegations. *Id.* Importantly, the ambiguity must appear before parol evidence is admissible. *See id.* at 521 ("The ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity.").

The court finds that the pollution exclusion in this case, like similar ones in commercial general liability policies, is clear on its face and broad in its reach. *Cf. Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 188 (5th Cir.1997) (applying Texas law); *Constitution State Ins. Co. v. Iso–Tex Inc.*, 61 F.3d 405, 409 (5th Cir.1995) (applying Texas law); *CBI Indus.*, 907 S.W.2d at 522; *E & L Chipping Co.*, 962 S.W.2d at 277. The Policy excludes coverage for any loss "*alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly*" the actual discharge of pollutants including losses related to damage to the company or its shareholders.[12]

■ In Texas, the language "arising out of" in a policy exclusion leads to "a broad, general, and comprehensive interpretation" of the exclusion. *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173

---

**12.** *See* Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. A–1, Directors, Officers and Corporate Liability Insurance Policy, ¶ 4(1).

F.3d 941, 943 (5th Cir.1999) (applying Texas law). "A claim need only bear an *incidental* relationship to the described conduct for the exclusion to apply." *Id.* (emphasis added).

The first question, then, is whether the underlying complaints allege facts which are incidentally related, directly or indirectly, to the discharge of pollutants. Defendants hold that they do not. Instead, Defendants contend that the complaints merely allege omissions, misrepresentations, and breach of fiduciary duty, none of which involve pollution. Specifically, Defendants state that "[i]t is undisputed that the underlying claims are brought by holders of USL's publicly-traded securities for losses allegedly suffered as a result of USL's failure to disclose certain conduct and liabilities." [13]

What Defendants conveniently leave out of their description is that the "certain conduct and liabilities" directly relate to, in fact, *are* polluting activities. In an effort to convince the court that the loss is not related to the polluting activities, Defendants argue that the loss is the result "of a sole cause independent of pollution." [14] Quoting *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir.1990), they argue that when a loss is "caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable." Defendants suggest that, but for the misrepresentations, the underlying lawsuit would not exist. Therefore, they conclude, the loss was produced by two distinct and independent causes—pollution and misrepresentations (about pollution).

The court disagrees with Defendants that the loss alleged in the underlying complaint emanates from two independent causes. Where the claim would not exist "but for" conduct excluded by the policy, the loss is not the product of two independent causes and the insurer is not liable. *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771 (5th Cir. 1999) (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 704–05 (5th Cir.1996)); *Guaranty Nat'l Ins. Co.*, 909 F.2d at 137 (holding that an insurer is not liable when a covered peril and an excluded peril concurrently [15] cause the loss). The question, then, is whether the loss would exist but for the pollution, rather than, as Defendants pose it, whether the loss would exist but for the misrepresentations.

The factual allegations (not the legal theories) in the complaint make it absolutely clear that USL's polluting activities are central to their claims. For example, the consolidated complaint avers that USL's revenues were materially overstated because the company charged customers for the proper treatment and disposal of hazardous wastes when, in reality, the company discharged untreated wastes into the public sewer system, thereby generating income while lowering expenses. Similarly, the derivative action alleges that the corporate officials violated their fiduciary duties by allowing employees to dump illegally hazardous wastes and. lie

---

**13.** Defendants' and Counter-claimants' Motion for Partial Summary Judgment, Docket Entry No. 29, p. 3.

**14.** *Id.* at p. 8.

**15.** Defendants argue that the word "concurrently" implies that the two causes occur simultaneously. However, concurrently also means acting together or converging. The case cited in *Guaranty Nat'l Ins. Co.* states it this way: "[W]here the finding of fraud adds nothing to the insured's liability, the fraud liability exclusion clause is not applicable, but where the insured's liability would not exist except for the fraud, the clause excluding fraud relieves the insurer of liability." *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 944 (Tex.Civ.App.-Austin 1968, no writ).

about it. "But for" the polluting activities, no claims of misrepresentation, nondisclosure, or breach of fiduciary duty would exist. On the face of the underlying complaint, the two alleged acts, polluting and misrepresenting, were not mutually exclusive, but were related and interdependent. *Cf. Travelers Indem. Co.*, 166 F.3d at 771, 772 (finding that insurance company properly denied coverage where the covered peril could not have occurred absent the conduct that was excluded under the policy); *Burlington Ins. Co. v. Mexican Am. Unity Council, Inc.*, 905 S.W.2d 359, 363 (Tex.App.-San Antonio 1995, no writ) (holding that the origin of damages alleged in an underlying lawsuit was excluded conduct which was not separate and independent from covered conduct).

In this case, whether the factual allegations in the underlying complaint are related closely enough to pollution to bring them within the exclusion hinges on the broad interpretation that Texas law offers exclusions which use the terms "arising out of." In light of this legal obstacle, Defendants direct the court to a more favorable unpublished Sixth Circuit opinion that applies Ohio law. *See Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 1998 WL 774109 (6th Cir. 1998). There, the Sixth Circuit found that an asbestos exclusion did not apply to allegations that the insured had misrepresented future financial exposure to asbestos claims and the degree of insurance coverage for those claims. *See id.* at *1. Al-

though that case may be properly decided according to Ohio law, it provides no guidance for the case currently before this court, primarily because of the significant difference between Texas and Ohio law.

Unlike Texas law, Ohio courts "have not allowed broad exclusions to bar indemnification for claims otherwise covered." *Id.* at *3. Exclusions must be "specific, clear, and exact" to be given *any* effect under Ohio law. *Id.* at *3, *6. Even more divergent from Texas law is Ohio's narrow interpretation of the terms "arising out of." Ohio requires a causal connection, something more than a "but for" analysis. *Id.* at *4. The Sixth Circuit cites an Ohio Supreme Court case that held the "proper test is 'whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle.'" *Id.* (quoting *Kish v. Cent. Nat'l Ins. Group*, 67 Ohio St.2d 41, 424 N.E.2d 288, 294 (1981)). Relying on Ohio law, the Sixth Circuit concluded that the underlying complaint was not "based upon," "arising out of," or "related to" the use of asbestos. *Owens Corning*, 1998 WL 774109, at *4–*6. Throughout their briefs, Defendants quote language from the *Owens Corning* case. However, absent similarity with Texas law, the *Owens Corning* analysis means nothing to this court.

Amid the paucity of cases that discuss directors and officers ("D & O") insurance policies' pollution exclusions [16] is another case relied on by Defendants. In *Lansing Bd. of Water & Light v. Deerfield Ins. Co.*,

---

**16.** More often, courts have interpreted pollution exclusions in general liability policies. *See, e.g., Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72 (1997); *Motorists Mut., Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky.Ct.App.1996); *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617 (1995); *CBI Indus.*, 907 S.W.2d at 517. Some of these courts were troubled by the results when the terms of the pollution exclusion were applied to small-scale, accidental discharges of pollution. *See Koloms*, 227 Ill.

Dec. 149, 687 N.E.2d at 79. Therefore, some of the courts examined extrinsic evidence regarding the history of the exclusion and found that the exclusion was intended only to deprive coverage to large-scale environmental contamination. *Id.* at 79–81; *RSJ, Inc.*, 926 S.W.2d at 682; *Sullins*, 667 A.2d at 622–23. Based on that finding, those courts deemed the exclusion to be latently ambiguous and interpreted it in favor of the insured. *Koloms*, 227 Ill.Dec. 149, 687 N.E.2d at 81;

183 F.Supp.2d 979, 982 (W.D.Mich.2002), a municipal administrative agency sought coverage under its Public Officials Liability Insurance policy for claims that the agency failed to indicate the true scope of an asbestos removal project during the bidding process and, ultimately, forced the contractor to remove additional asbestos without proper remuneration. The insurer declined coverage based on a pollution exclusion that precluded "coverage for claims 'arising out of any actual or alleged … removal or disposal of … irritants, contaminants or pollutants into or upon the land, atmosphere or water, to include groundwater.' " *Id.* at 983.

Applying Michigan law, the district court found that the underlying claims related to the "failure to disclose certain information, not an injury caused by pollution." *Id.* at 985. The court held that the causal connection required by the words "arising out of" was a close relationship. *Id.* at 986. Consequently, the court found that asbestos, merely the subject of the contract, was too distant a cause of the claim that the agency misrepresented facts and obtained an unfair contract. *Id.* at 986, 988.

Because Michigan law sets out a more stringent standard than Texas law on caus-al connection for claims that "arise out of" excluded conduct, the *Lansing* case, like *Owens Corning*, provides no support for Defendants' position before this court. Moreover, the facts in *Lansing* illustrate a more remote relationship between the release of asbestos and the agency's misrepresentations than present here between Defendants' polluting activities and their misrepresentations to shareholders.

Here, the question of how closely related the pollution must be to the loss is answered entirely by the language of the exclusion itself in light of Texas law. If the loss is incidentally related to the release or escape of pollutants, it is excluded by the Policy. Under the facts of this case, the court finds that the terms of the pollution exclusion are neither patently nor latently ambiguous. The loss described in the factual allegations bears more than an incidental relationship to the conduct excluded.

Defendants argue that to read the pollution exclusion as the court does eliminates coverage for "every conceivable form of securities law claim that might ever be brought against USL, because USL is in the business of waste and pollution collection, disposal, and recycling." [17] The argument is meritless.[18] The pollution exclu-

---

*RSJ, Inc.,* 926 S.W.2d at 680–81; *Sullins,* 667 A.2d at 624. Unlike these other courts, the Texas Supreme Court remains steadfast in its refusal to use extrinsic evidence of intent, including information regarding the development of the exclusion, to create a latent ambiguity. *See CBI Indus.,* 907 S.W.2d at 521–22. The Fifth Circuit dutifully follows Texas law in applying broad pollution exclusions as written. *See C.A. Turner Constr. Co.,* 112 F.3d at 188; *Iso–Tex Inc.,* 61 F.3d at 408. Here, Defendants suggest that the exclusion was intended only to protect insurers against damages resulting from personal injury, property damage, or pollution fines and cleanup costs. However, the language in the Policy excludes coverage for *any loss* arising out of the discharge of pollution, not merely losses related to cleanup, removal, etc. (although those losses are also covered).

17. Defendants' and Counter-claimants' Motion for Partial Summary Judgment, Docket Entry No. 29, p. 4.

18. The Sixth Circuit stated in *Owens Corning* that, should the required connection between the claim and asbestos exclusion be too loose, all shareholder derivative suits would be excluded because Owens Corning's business largely concerned the sale of asbestos and products containing asbestos. *Owens Corning,* 1998 WL 774109 at *6. The court finds that such is not the result under the interpretation recommended in this case. Moreover, Defendants are not in the business of discharging pollutants. Therefore, claims would

sion does not eliminate coverage of claims alleging self-dealing, embezzlement, failure to pay taxes, and various other illegal or ultra vires acts. The exclusion does not preclude coverage for all securities claims, only those that arise out of the discharge of pollutants. All other possible categories of misrepresentations related to the purchase or sale of securities would avoid application of the exclusion. The boundaries of the pollution exclusion simply are not limitless under the court's interpretation.

As the court finds that the facts alleged by the shareholders, on behalf of themselves and USL, fall within the Policy's pollution exclusion, Plaintiff has no duty to indemnify (or to defend) Defendants. Nevertheless, Defendants argue that Plaintiff has a duty to advance defense costs. Even if the pollution exclusion bars coverage for losses incurred in connection with the underlying complaint, Defendants argue, the exclusion does not relate to Plaintiff's obligation to advance defense costs. Defendants' very brief argument on this point suggests that the insurer must advance defense costs regardless of any coverage obligations:

> The obligation to advance Defense Costs in Clause 8 of the Policy is subject only to exceptions [ ]as *"hereinafter* stated" in the Policy.... The Pollution Exclusion is set forth in Clause 4 of the [Policy], *prior* to the mandatory language in Clause 8 requiring the Insurer to advance Defense Costs, and so is not

> not be excluded as incidentally related to the excluded conduct simply by virtue of Defendants' type of business.

**19.** *Id.* at p. 23.

**20.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 28, Ex. A–1, Directors, Offi-

available to negate National Union's obligation.[19]

Defendants' position is untenable.

The declarations page of the Policy states that Plaintiff is obligated to advance defense costs "pursuant to the terms herein." [20] The exclusions section revokes coverage for a "loss," which (by Policy definition) includes defense costs, for claims made against Defendants that fall within any of the listed exclusions.[21] Furthermore, the advancement of defense costs is made moot by this court's ruling. The Policy requires that the insured repay advanced defense costs "in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of the policy to payment of such Loss." [22] The Policy unambiguously precludes the advancement . of defense costs related to claims for which coverage is excluded.

The court's findings that Plaintiff has no duty to defend, no duty to indemnify, and no obligation to advance defense costs are dispositive of all claims currently in this case. The viability of Defendants' counterclaims, all of which arose out of Plaintiff's refusals to provide coverage and to advance defense costs related to the underlying complaint, depends on a finding that Plaintiff owes Defendants a duty to defend or indemnify.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendants' motion be **DENIED**. If adopted, this recommenda-

cers and Corporate Liability Insurance Policy, Declarations.

**21.** *Id.* at ¶ 2(g); ¶ 4.

**22.** *Id.* at ¶ 8.

tion resolves all claims currently in the lawsuit.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas, 77208. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

Dated: April 3, 2003.